RANDOLPH and another, trustees, appellants, and LARNED, receiver, &c., and others, respondents.

27 557
a58 463
a58 465

27 557
64L 591

27 557
65L 73
65L 74

1. The supplement of March 13th, 1866, to the act to prevent frauds by incorporated companies, is remedial in its nature, and must be so construed as to suppress the mischief and advance the remedy.

2. That act provides that where the property of an insolvent corporation, in the hands of a receiver, is encumbered with mortgages or other liens, *the legality of which is brought into question,* &c., the Court of Chancery may order the receiver to sell the same clear of encumbrances, &c. *Held,* that it was not intended by the words "the legality of which is brought

into question," to confine the remedy to mischief arising from litigation of .any particular character, but to all litigation between encumbrancers re-.specting the validity, extent or priority of their liens.

3. Although, technically speaking, franchises are property, they are property of a peculiar character, arising only from legislative grant, and are not, in ordinary cases, subject to execution, or to sale and transfer, .even in payment of the debts of the corporation, without the assent or .authority of the legislature.

4. Under the said supplement of March 13th, 1866, taken in connection with the twentieth section of the original act, (*Nix. Dig.* 409,) the Chan-.cellor has discretionary power to order a sale of the franchises, as well as of the property of the insolvent company, clear of encumbrances.

5. A law which, by a revision, is repealed, and at the same time thereby re-enacted, does not, for a moment, lose its binding force.

6. As between trustees for first mortgage bond-holders of an insolvent .corporation, whose debt under the mortgage under foreclosure by them is .due, and exceeds the whole value of the property of the corporation, and who apply to have the property delivered to them, and the receiver of said company, who applies for an order for sale of the property and fran-chises free from the lien of the encumbrances, the trustees were held to be .entitled to the property, and to be permitted to operate the road, leaving the question as to the mode and manner of sale to be settled at the deter-mination of those proceedings.

On appeal from an order of the Court of Chancery. The .case is reported in 11 *C. E. Green* 270.

*Mr. McGee* and *Mr. Cortlandt Parker*, for appellants.

*Mr. Abeel,* for respondents.

The opinion of the court was delivered by
GREEN, J.

The controversy in this cause arises between the receiver of the New Jersey West Line Railroad Company, an insolvent .corporation, and the trustees named in a mortgage given by the company, on their property and franchises, to secure the payment of bonds amounting to $3,000,000. A bill by the trustees, to foreclose the mortgage, and the bill to declare the .company insolvent, and for the appointment of a receiver, were filed about the same time.

The order appealed from was made on the hearing of cross-petitions: the first, filed by the trustees, praying that they may be permitted to enter upon and take possession of the railroad and its appurtenances, and to operate and manage the same pursuant to the terms of the mortgage, and that the receiver may be directed to turn over to the trustees the railroad, with all the real and personal property of the company ; the other, filed by the receiver, praying that the proceedings under the foreclosure suit may be stayed, and that the receiver may be authorized to sell the property and franchises of the company in such manner as might be deemed best for the interest of the creditors. These petitions were heard together, and an order made that the petition of the trustees be denied, and that the receiver sell, at public auction, all the property, rights and franchises of the company, free and clear from all liens and encumbrances of every kind, except a mortgage held by the commissioners of the school fund on the land under water at Jersey City.

The appellants object to this order, first, because it directs the receiver to sell free of the lien of their mortgage, and second, because it denies to the trustees the right to take possession of and manage the mortgaged premises. It is insisted, on behalf of the trustees, that the order to sell clear of encumbrances is unauthorized by any statute existing at the time of the making and recording of the mortgage. If such authority exists, it must be found in the supplement to the act to prevent frauds by incorporated companies, approved March 13th, 1866, taken in connection with the twentieth section of the original act, (*Nix. Dig.* 409,) both of which are re-enacted, substantially in the same language, in the revision of 1875, being sections 84 and 85 of the act concerning corporations. The supplement of 1866 provides that where the property of an insolvent corporation, in the hands of a receiver, is encumbered with mortgages or other liens, the legality of which is brought into question, and the property is of a character materially to deteriorate in value pending the litigation, the Court of Chancery may order the receiver to sell the same

clear of encumbrances, at public or private sale, for the best price that can be obtained, bringing the money into court, there to remain subject to the same liens and equities of all parties in interest, and to be disposed of as the court shall order and direct. This is a supplement to a statute against frauds, is remedial in its nature, and should receive a liberal construction. In the language of the books it should be so construed as most effectually to meet the beneficial end in view, and to prevent a failure of the remedy; or, as elsewhere stated, "everything is to be done in advancement of the remedy, that can be given consistently with any construction that can be put upon it." *Potter's Dwarris on Statutes*, 73, 231, and cases cited.

The power to order a sale clear of encumbrances, depends upon two pre-requisites specified in the statute. The legality of the lien must be brought in question, and the property must be of a character materially to deteriorate in value pending the litigation. The counsel for the trustees would give to the phrase, "legality of the mortgage," a *narrow* and *limited* signification, entirely inconsistent with a liberal construction of the act, and totally destructive of its beneficent provisions. They seek to confine its operation to cases only where legal objections are raised to the validity of the mortgage itself, and to exclude all questions in relation to the equities arising as to the extent of the lien created by it, and its relative priority as to other encumbrances. A mortgage may be a legal lien upon the mortgaged premises; its legality, so far as the mortgagor is concerned, may be undoubted, but as against other parties, in a court of equity, it may be wholly inoperative, and may be entirely frustrated by equities arising in favor of subsequent liens.

The object of the legislature was the prevention of loss by the depreciation in value of the property, pending protracted litigation. The mischief and the remedy proposed are plainly apparent upon the face of the act. It was not intended to confine the remedy to mischief arising from litigation of any particular character, but to all litigation between encum-

Randolph *v.* Larned.

brancers respecting the validity, extent, or priority of their liens. The act must be so construed as to suppress the mischief and advance the remedy.

It is farther urged that the franchises of the company are not within the words of the act; that they are not property, and cannot legally be sold by virtue of this order. All the elementary writers treat of franchises as real property, though incorporeal in their nature. Chancellor Kent, in his commentaries, says that an estate in a franchise and an estate in land rest upon the same principles. Although, technically speaking, franchises are property, they are property of a peculiar character, arising only from legislative grant, and are not, in ordinary cases, subject to execution or to sale and transfer, even in payment of the debts of the corporation, without the assent or authority of the legislature. If the act of 1866 stood alone, there might be great hesitation in defining property to include corporate rights and privileges, but it is to be construed in connection with the original act to which it is a supplement. Section 20 of that act authorizes the sale of the principal work for the construction of which the company was incorporated, together with all the chartered rights, privileges, and franchises of the company, appertaining to such principal work. The supplement was intended to extend and enlarge the remedy, and to give the Chancellor power to order the sale to be made clear of encumbrances. The principles of construction above mentioned are equally applicable here, and lead to the same result. We must hold that the order in question comes within the spirit and meaning of the act, and that the Chancellor has a discretionary power in this and similar cases, to order a sale, both of the property and franchises of the company, clear of encumbrances.

The further point was taken by the counsel of the appellants, that the act of 1866 was repealed in the revision of 1875; that by the repeal, its provisions ceased to operate, and that the re-enactment, in the revision, of the same provisions, cannot affect their rights and remedies under a pre-existing mortgage. In other words, they ask this court to

hold that a mere revision of the laws, designed for public convenience and public good, by which an existing law is repealed, and the same law re-enacted, both the repeal and re-enactment taking effect simultaneously, in a measure abrogates and annuls the provisions of the original act, instead of merely continuing them in force. Such construction of the effect of a revision of the laws is totally inadmissible. Upon this point, the reasoning of the Chancellor is conclusive, and is fully sustained by the language of Chief Justice Shaw, in *Wright* v. *Oakley*, 5 *Metc.* 400, and other cases cited in his opinion.

There only remains for consideration the second ground of appeal, viz., the denial to the appellants of their right to take possession of the premises, as trustees under the mortgage. It appears, by the case, that in the opinion of the receiver, the probable value of all the property and estate of the company does not exceed $1,200,000, and that the amount now due in gold for principal and interest of bonds actually issued by the company, and secured by the mortgage in question, exceeds $2,200,000. A suit by the trustees, for the foreclosure of the mortgage, is now pending in the Court of Chancery, and they, by their petition, ask that the property may be sold under the foreclosure proceedings, and that, in the meantime, they may have possession of and operate the road for the benefit of the bond-holders, as provided in the mortgage. The debt now being due, they are entitled, as first mortgagees, to the possession of the mortgaged property, and to apply the income, if any, to the reduction of their debt, and a court of equity will not interfere with such legal right, unless the rights and equities of other parties are prejudiced by its exercise. Here no other creditor can be injured. The mortgage is claimed to be the first lien on all the property and franchises of the company, excepting the land under water at Jersey City. The mortgage debt very largely exceeds the value of the property. The appellants claim that the interests of the bond-holders can be better protected by a sale under the mortgage than in any other way. In the

foreclosure suit, all disputed questions as to the validity of the mortgage, the estate conveyed, and the extent of the lien created by it, can best be determined; and the property can probably be sold to better advantage if all these questions are first disposed of. If the mortgagees are willing to risk the further deterioration of the property pending the litigation, no one else, so far as shown in the case, has a right to complain of the delay, and no reason appears why the prayer of the appellants should not be granted.

On the hearing before the Chancellor, this part of the case was presented in a very different aspect. Counsel, alleged to represent the holders of almost all the bonds, were there present, asking for the sale by the receiver, and, under such circumstances, there could be no objection to the order. But it is now alleged that such counsel were mistaken as to the extent of their authority, or as to the wishes of the bondholders. They certainly do not appear here to resist the appeal or to sustain the order. No one is before this court except the receiver, who may be said to represent a single bondholder, and the trustees under the mortgage, whom we must hold, in the absence of proof to the contrary, to be the representatives of all the other bond-holders.

Upon this last ground alone, the order of the Chancellor should be reversed, but without costs, and the record remitted to the court below, with directions that the prayer of the petition of the appellants be granted; that they be let into the possession of the railroad, its property and appurtenances, and be permitted to operate the same, and to proceed in the suit for the foreclosure of their mortgage, leaving the question as to the mode and manner of sale to be settled at the determination of those proceedings.

Order unanimously reversed.