HUME, SMALL & CO. v. THE PROVIDENCE WASHINGTON
INSURANCE CO.

1. A mere equitable interest in property may be the subject of insurance.
2. An omission to charge, even upon an issue raised by the pleadings, is not error of law, unless the judge was requested to charge thereon and he refused; and, in a law case, only errors of law can be considered by this court.
3. In an action on a policy of insurance on an American vessel, the alienage of the plaintiffs as a defence under the statutes of the United States must be specially pleaded in the answer; otherwise, evidence upon the subject is irrelevant, and an omission to charge thereon no error of law.
4. The statutes of the United States forbidding an alien to own an American vessel under pain of forfeiture, does not prevent alien owners from recovery, in case of loss, on a policy of insurance, based upon a valuable consideration.
5. Where aliens purchase a vessel and have the title made to a citizen, but really for their benefit, they may lawfully take in their own names

a policy of insurance upon such vessel, the policy not being designed to aid an illegal purchase.

6. In action on a policy of insurance, questions of misrepresentation and concealment are pure questions of fact for the jury.

7. It is the duty of the judge to construe a policy of insurance, a written instrument, and to explain what is meant by the term "deviation," and its effect, and then to leave it to the jury to say whether the facts found make out the defence of deviation.

8. *It seems* that deviation is a doctrine that applies to particular voyages only, and is inapplicable where a vessel is insured for a year and does not go beyond the limits specified in the policy.

9. In determining whether the Circuit Judge has committed error of law in his instructions to the jury, the charge must be considered as a whole.

10. When the loss of a vessel has happened wholly from one of the perils insured against, the negligence of the master and crew in failing to perform their duties as such is no defence to the insurance company, where the same did not in any way contribute to such loss.

Before KERSHAW, J., Charleston, March, 1884.

The facts of this case are stated in the opinion. The judge's charge was as follows:

I consider the court and the counsel on both sides fortunate in having a jury so well informed on subjects of this kind as I am satisfied this jury is. It lessens the burden of responsibility upon both court and counsel.

You are aware, gentlemen, that a policy of insurance is a contract whereby the underwriters undertake to make good any losses which may ensue to the person insured which are provided against in the policy, and, like any other case, the burden is upon the plaintiff claiming to recover under such a contract; first to prove the contract, and next to prove the loss under such circumstances as would entitle them to recover under the contract. If the plaintiffs make out a case of that kind, they are entitled to recover the full amount of the loss which they have suffered by the perils against which they were insured by the policy, unless there be something else in the case shown and established by the evidence which would prevent their recovery. It is chiefly in regard to these objections to the recovery under the peculiar circumstances of this case that your attention has been called by

the counsel, and the various propositions which have been made by the counsel to the court in their requests to charge the jury involve chiefly those objections to which I have referred.

I will ask your attention now to what I shall charge you as to the law upon which you are to determine this case. After I have laid down these propositions of law, the whole case is in your hands to deal with as you think the evidence requires under the legal propositions as laid down by the court.

An insurance on a ship does mean ordinarily and *prima facie* the legal interest in the vessel, and if the policy is intended to cover an equitable interest, it should be so specified. But where the equitable owner of the vessel has possession and control of the same as owner, though the ship's papers may be in the name of another person, who holds the naked legal title, a failure to disclose the true nature of the title of the insurance would not vitiate the policy where the insurer had made no inquiry as to the nature of the title. It would be otherwise, however, if under the circumstances just stated the vessel was not in the possession of the insured, holding the equitable title, and subject to their control as their own property, but was under the control and in the possession of another person as owner, because the insurance of a vessel is supposed to be made by the underwriters, with some reference to the character of the insured, and their prudence and care as owners in the management and preservation of the vessel. A failure in such case to disclose the nature of the interest of insured, when it is other than the legal ownership, the insured being out of possession, would be a material concealment, which would vitiate the policy.

An equitable interest is an insurable one, and may exist and be proved conjointly with the legal title at the custom house in another. If the jury find that the plaintiffs paid the money for the purchase of the tug and for subsequent repairs and the premiums on the insurance, and that the legal title to the said tug was taken and held in the name of W. B. Pringle, Jr., to dispose of the same as the plaintiffs should direct, the said W. B. Pringle, Jr., assenting thereto, then the plaintiffs had an insurable interest in said tug, and, if entitled to recover at all, are entitled to recover to the extent of that interest up to $3,000, provided such

interest be covered by the policy and the policy be in force at the time of the loss.

There is no warranty in the policy as to the legal title, nor any charge in the answer, or evidence on the trial, showing fraudulent concealment or misrepresentation which would of itself avoid the policy.

Any implied warranty of seaworthiness is satisfied if, when the tug was put to work, she was in a condition proper for doing the work, and was kept so by reasonable repairs.

The defences of deviation, misrepresentation, and concealment are questions of fact for the jury and must be proved by the party alleging the same.

The term seaworthiness varies according to the occupation in which the vessel is engaged, and is a question of fact for the jury.

The contract of insurance must be construed in its fair meaning, and having been written and made out entirely by the company, in cases of doubt must be construed most strongly against the company.

If the jury find that the loss has happened wholly from one of the perils insured against, then the negligence of the master and crew in failing to perform their duties as such is no defence to the company when the same did not contribute in any way to such loss.

The warranty of seaworthiness at the commencement of each voyage contained in the policy is a condition precedent, and the plaintiffs cannot recover unless it was literally complied with.

The warranty of seaworthiness, as far as relates to the condition of the boat, requires that when she sails on a voyage under the policy, she should be well furnished, tight, sound, staunch, and strong; that is, competent in her hull to resist the ordinary attacks of wind and weather; and if the "Jennie" left Savannah during the currency of the policy in a leaky condition, and not sound and staunch in her hull, the policy was vitiated, and the underwriters were discharged.   A policy of insurance on a vessel or tug imposes upon the insured at all times, during the continuance of the risk, the legal duty of keeping the boat in a condition of reasonable security, and if the plaintiffs, or their agents,

allowed the "Jennie" to remain in a leaky condition, anchored out in New River, with nobody on board competent to protect her against the perils to which she was exposed, and by reason of their negligence she sank, the plaintiffs are not entitled to recover.

In all marine insurance the insured implicitly warrants that his vessel is competent to encounter all the ordinary perils of navigation, and if the "Jennie" sank because of her inability to resist the ordinary perils to which boats similarly situated are exposed, the plaintiffs are not entitled to recover. If the "Jennie" sank through the carelessness or negligence of the plaintiffs or their agents, either in leaving her in the river in a leaky condition, or by exposing her to perils which would not have been operative but for such negligence, the plaintiffs cannot recover. If an insured vessel is in a leaky and unseaworthy condition, so as not to be able to withstand the ordinary perils to which vessels in like place may be exposed, it is the duty of the owner to repair her, so as to make her reasonably competent to resist the perils to which her situation may expose her. If the "Jennie" was unseaworthy when she was laid up, and the plaintiffs failed to put her in a safe and seaworthy condition requisite for her safety when laid up, then the plaintiffs cannot recover. It was the duty of the plaintiffs to keep the "Jennie" in such condition as to be reasonably sufficient to withstand the ordinary perils attending a boat so laid up at that time and place, and if she was not so kept, the plaintiffs cannot recover.

If a boat sinks without any known cause, the law presumes that such sinking is caused by the unseaworthiness of the boat. So if the loss of the "Jennie" arose from ordinary wear and tear, or from unseaworthiness, or from encountering any ordinary perils of the river, the plaintiff cannot recover, for as to these they are their own insurers. It is the duty of the assured to adopt such measures and to take such precautions for the safety of the boat as a prudent owner uninsured under the circumstances of time and place would have adopted, and if the "Jennie" sank because of the failure of the plaintiffs, or their agents, so to do, the plaintiffs are not entitled to recover. The burden of proof is upon the plaintiffs to show that the "Jennie"

sank through the extraordinary dangers and unforeseen accidents against which only the defendants insured them; and if the jury believe that the loss was caused, partly by the insufficient condition of the boat, and partly by the negligence of the plaintiffs, they are not entitled to recover.

In marine insurance anything that materially varies the risks insured against discharges the insurer; and unexcused or unreasonable delay, not justified by necessity, or incurred *bona fide*, with a view to the purposes of the voyage, does so vary it.

Those are the legal propositions which I charge you, gentlemen. I do not think of anything else to say to you. If you find for the plaintiff, you will find for the full amount of their loss; and if you find for the defendant, you will say: "We find for the defendant."

The jury found for the plaintiffs three thousand dollars.

The exceptions are fully stated in the opinion.

*Mr. J. N. Nathans*, for appellant, cited the following authorities:

First exception. 15 *S. C.*, 93; *Rev. Stat. U. S.*, §§ 4377, 4189, 4320; 8 *Cranch*, 398; 14 *Wall.*, 57; 11 *Johns.*, 293; 15 *Id.*, 24; 1 *Phil. Ins.*, 129; 1 *Whart. Cont.*, § 362; *Cons. of U. S.*, Art. VI.

Second exception. 1 *Arn. Ins.*, 418, 388, 394,; 2 *Pars. Mar. Ins.*, 1; 7 *Cranch*, 26; 19 *S. C.*, 124.

Third exception. 3 *Blatch.*, 276; 1 *Pars. Mar. Ins.*, 374, 381; 2 *Metc.* (Mass.), 443; 4 *Rich.*, 419; 3 *S. C.*, 59.

*Messrs. W. J. Whaley* and *Buist & Buist*, contra.

July 3, 1885. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action of plaintiffs upon a policy of insurance issued by the Providence Washington Insurance Company, incorporated under the laws of Rhode Island, and doing business in this State, "on the tug boat 'Jennie,' her hull, tackle, apparel, boiler, machinery, appurtenances, and furniture, on board, for one year from October 20, 1882, at noon. Vessel valued at $4,000. Privilege to tow phos-

phate and lumber in and around the rivers and creeks between Beaufort, S. C., and Savannah, Ga., and to proceed to Charleston, S. C., if necessary, and also to tow vessels, not oftener than twice a month, from and to sea, off Tybee Light. Vessel valued at $4,000, including premium. Insurance on vessel $3,000, premium $150." The complaint made an exhibit of the policy and set forth the interest of the plaintiffs in the boat, being as stated, for "the repayment of advances made to one Schlegelmilch, who was the purchaser, and engaged in the lumber business on New River; the bill of sale of said tug boat being taken in the name of W. B. Pringle, Jr., the chief clerk of the plaintiffs, and a citizen of the United States, who held the same as security for the repayment of said advances to the plaintiffs." It charged that within the time insured the tug was lost "by the perils of the sea," &c.

The defendants answered, admitting the execution of the policy, but making several defences, which may be condensed as follows: 1. They deny that the legal title to the tug was in the plaintiffs, and insist that the equitable title was not an insurable interest. 2. They allege concealment of their true title by the plaintiffs. 3. Misrepresentation by them. 4. Unseaworthiness of the tug. 5. That the loss of the boat was occasioned by the negligence of insured and agents; and, 6. "Deviation."

The cause was heard by Judge Kershaw and a jury, when much testimony was taken, all of which is printed in the "Brief." In general terms, the testimony tended to show the execution of the policy and the receipt of the insurance by the defendants after full knowledge of the relations of the plaintiffs to the vessel—who had purchased the "Jennie" from the Uric Guano Company and paid the purchase money—that one F. Schlegelmilch was to have her, if he was able to work out her purchase money; and in the meantime the legal title was taken in the name of W. B. Pringle, Jr., the chief clerk of the plaintiffs, who really had no interest, but was to hold it for the benefit of his employers; that Schlegelmilch, the prospective owner, took charge of the boat as master, and ran her in his raft and lumber business; that generally, when she was unemployed, the boat was anchored out in the middle of New River, in front of the

house of the master, Schlegelmilch, which stood some fifty yards from the river, and in full view of the boat riding at anchor; that while in that position the master was absent, but the boat was under the charge of one Hahn, who visited her several times during the day and night, but slept at the house; and that in the evening of April 5, 1882, she was struck by a gale of wind from the southwest, which continued all night, and before daylight the next morning the boat dragged her anchor, went ashore, and sank.

It seems that both parties made requests to charge, but they are not in the "Case," nor is it stated whether the judge refused any of the requests made. Upon the charge, the jury found for the plaintiffs the full amount of the policy, $3,000. The defendants made no motion before the Circuit Judge for a new trial, but appeal to this court upon three exceptions, which will be considered in their order.

The first exception alleges error in the following part of the charge: "If the jury find that the plaintiffs paid the money for the purchase of the tug and for subsequent repairs, and the premiums and insurance, and . that the legal title to said tug was taken and held in the name of W. B. Pringle, Jr., to dispose of the same as the plaintiffs should direct, the said W. B. Pringle assenting thereto, then the plaintiffs had an insurable interest in said tug, and if entitled to recover at all, are entitled to recover to the extent of that interest up to $3,000, provided such interest be covered by the policy, and the policy be in force at the time of the loss." "Whereas it is submitted that the plaintiffs, being aliens, could not acquire an interest as equitable owners in the tug, and could have no insurable interest as such in the same."

This exception seems to concede that a mere equitable interest in property may be the subject of insurance as charged by the judge, and in that view we concur. From the terms in which the proposition was announced, it must be assumed that the jury found that the plaintiffs had paid the purchase money of the tug and for subsequent repairs, premiums, and insurance, and that the legal title was held by Pringle only for their benefit. Under these circumstances it would require a very strong case to author-

ize the insurers, after loss actually occurred, to deny liability according to the terms of a contract made by themselves, with full knowledge of the circumstances, and as to the manner in which the property was held. It has even been matter of controversy whether a mere hope or expectation without any interest in the subject matter, a mere wager policy or bet that a certain event would or would not take place, might or might not be recoverable as a valid contract; but there can be no doubt that any lawful interest existing at the time of the loss will entitle the insured to recover on his contract, whether that interest in the subject insured be absolute or contingent, legal or equitable. A creditor to whom property is assigned as collateral security has an insurable interest to the extent of his debt. Chancellor Kent, with whom the subject of marine insurance seems to have been a sort of specialty, says: "The interest need not be a property in the subject insured. It is sufficient if a loss of the subject would bring upon the insured a pecuniary loss, or intercept a profit. Interest does not necessarily imply a right to, or property in, the subject insured. It may consist in having some relation to, or concern in, the subject of the insurance, and which relation or concern may be so affected by the peril as to produce damage. Where a person is so circumstanced, he is interested in the safety of the thing, for he receives a benefit from its existence, and a prejudice from its destruction, and that interest, in the view of the English law, is a lawful subject of insurance," &c.    3 *Kent Com.*, 276; *Arnould Ins.*, 229.

It is, however, claimed that on the trial below, the plaintiffs themselves proved the fact that, although residing in this State and doing business here, they were British subjects, aliens; and as soon as that fact appeared, there was introduced a new defence not adverted to before, viz., that the plaintiffs, being aliens, could not, under the navigation laws of the United States, hold any interest in a vessel licensed in accordance with those laws; and that, therefore, they could not recover upon a policy insuring said vessel even against those who had made the contract and received the consideration; and that it was error on the part of the Circuit Judge to omit so to charge. The issue of the alienage of the plaintiffs was not made in the pleadings. The evidence was not

developed with reference to such issue, and the fact of their being British subjects only fell out casually and incidentally, being assigned as a reason why the legal title to the vessel was taken by Mr. Pringle; yet it was urged before us that the defence, based upon this new fact, should have been held conclusive, and that the omission of the Circuit Judge so to charge was error of law.

It does not appear that the Circuit Judge was requested so to charge, and we do not consider the point properly before this court. In a law case, as frequently held, our only province is to correct errors of law committed below, and that cannot be affirmed of a mere omission to charge, even in a case when the issue is made by the pleadings, unless it appears that the judge refused to charge after he was so requested. It is the office of exceptions to bring before the court only such matters as were contested below. Exceptions going beyond that will not be considered. Any other course, as we conceive, would be in excess of our very limited jurisdiction, and neither just to the Circuit Judge nor promotive of a systematic, orderly administration of the laws. "To permit this court to consider alleged errors of the Circuit Judge in omissions to charge, it is absolutely necessary that the case should show that he was requested so to charge." *Sawyer, Wallace & Co.* v. *Macaulay*, 18 *S. C.*, 543, and authorities cited.

It is, however, ingeniously urged that as soon as the evidence that the plaintiffs were British subjects fell out on the trial, that fact became a part of the case, and the Circuit Judge was bound, without being specially requested so to do, to charge that the plaintiffs, as aliens, could not hold "an equitable interest" in the boat "Jennie," for the reason that, under the navigation laws of the United States, aliens can hold no interest in an American vessel; that being incapable of holding any interest, they could not, on the principle that the whole includes all its parts, hold an "equitable interest," and that the failure so to charge was really not a mere omission, but an error of commission in charging the law incorrectly on the facts fairly in the case. This is certainly plausible, but it does not seem to us sound. The question made by the pleadings was not whether the plaintiffs had any interest in the boat, but that having only an equitable interest,

that would not support the policy and authorize a recovery on it. The defence that the plaintiffs were aliens was a very different affirmative defence, which was not made in the pleadings. When the proof of alienage fell out, it was really irrelevant to the issues joined, and as such possibly might have been stricken out or disregarded. "The question of the relevancy of a fact to a given inquiry is of importance, because evidence is not admissible to prove an irrelevant fact." *Best Evid.*, 352; *Steph. Dig. Evid.*, 135; 2 *Rap. & Law. Dict.*, 1092.

If the defence of the alienage of the plaintiffs, under the complex and numerous provisions of the navigation laws of the United States, was to be insisted on, it should have been distinctly stated in the answer and argued before the Circuit Judge. But it does not appear that it was considered at all, or that even the statutes of the United States, under which the defence is claimed to arise, were submitted for his consideration and construction, or that he was requested to charge the jury upon the subject. In his charge, the judge appears to have made no reference to the matter, and we cannot say that he committed error of law in confining himself to the issues made in the pleadings. As was said in the case of *Eason* v. *Miller & Kelly* (15 *S. C.*, 202): "Generally the issues of fact involved in a case will be found contained in the allegations of the plaintiff and the statements of the defence as stated in the answer; and where there is nothing more in the complaint and answer but questions of fact, then an examination of these pleadings will present the true issues submitted to the jury, and to which their verdict will be understood to be responsive. But the pleadings, in addition to questions of fact, may also raise questions of law. In such case, the questions of law do not go to the jury, but must be decided by the court," &c.

But as the court is always desirous that every case should have full consideration and be decided according to the law and the evidence, we have looked through the authorities upon the subject of the alienage of the plaintiffs, so far at least as to satisfy ourselves that no injustice has been done. There can be no doubt that in this State an alien who is not an alien enemy may acquire, hold, and contract concerning property in the same manner as a natural born citizen. *Gen. Stat.*, § 1768. There is

nothing about the contract of insurance which makes it an exception.    3 *Kent*, 253.    But it is claimed that, in reference to a certain kind of property, American vessels, there is in the laws of the United States a prohibition against ownership by aliens on pain of forfeiture.    The point as applied to this case has a double aspect; that the "Jennie" at the time she was insured was liable to forfeiture under a section of those laws (*U. S. Rev. Stat.*, § 4320), which, among other things, provides that "the master of such vessel shall also swear that he is a citizen, &c., * * * and if such vessel be less than twenty tons burden, the husband or managing owner shall swear that she is wholly the property of citizens of the United States," &c. ; and that, therefore, being liable to a forfeiture for the violation of this law, a policy on the vessel was illegal and void.

It will be observed that the vessel had not been forfeited, and that this was not a proceeding on the part of the government to have a forfeiture declared, and therefore we need not inquire whether the facts would make out a violation of the law ; but it was an action on a contract to insure the vessel made by the defendants themselves upon fair and valuable consideration received.    In such an action, as we understand it, the insurers may not escape the consequences of their contract by interposing the defence that the boat insured was liable to forfeiture.    *The Ocean Insurance Company* v. *Polleys*, 13 *Peters*, 163.    That case was very analogous to this.    The defendants had insured the schooner "Mary" for one year.    They were afterwards sued on the policy, and made defence that the "Mary," at the time she was insured, was liable to forfeiture under a law of the United States, and therefore the policy was not binding.    The Supreme Court overruled the defence, and Judge Story, in delivering the judgment, said : "The objection then as insisted on by the counsel for the company involved two distinct propositions.    The first was that the schooner was liable to forfeiture ; the second was that the policy on her was therefore void.    Now, the first might have been most fully admitted by the court, and yet the second have been denied, upon the ground that the policy was a lawful contract in itself, and only remotely connected with the illegal use of the certificate of registry, and in no respect designed to

aid, assist, or advance any such illegal purpose. We all know that there are cases where a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it was not designed to aid or promote. * * Suppose the 'Mary' had been repaired in port, and the shipwrights had known the circumstances under which she had obtained the new certificate of registry, would they, in consequence of such knowledge alone, have lost their right to recover for their work and labor? Suppose a vessel had been actually forfeited by some antecedent illegal act, are all contracts for her future employment void, although there is no illegal object in view, and the forfeiture may never be enforced?" &c.

In this case the legal title to the vessel was in Pringle, a citizen; but even if the equitable interest of the plaintiffs made the use of the certificate of license illegal, we cannot see that the policy, a contract in itself lawful and in no way forbidden, was in any respect designed to aid, assist, or advance that illegal purchase. See *Clark* v. *Protection Insurance Company*, 1 *Story*, 131; *Wilkes* v. *People's Fire Insurance Company*, 19 *N. Y.*, 187; *The Kate Heron*, 6 *Sawyer*, 106.

The second exception complains that the Circuit Judge "erred in charging that 'the defences of deviation, misrepresentation, and concealment are questions of fact for the jury, and must be proved by the party alleging the same'; whereas it is submitted that the interpretation of the policy as to the voyage prescribed therein and the causes thereof was a question of law for the court, and not of fact for the jury. The court should have construed the terms of the policy in relation thereto, and the jury have applied the facts adduced in evidence to the law so declared."

This exception states the law correctly, but, as it seems to us, there is a misapprehension as to what the judge did charge. There cannot be a doubt as to all questions of misrepresentation and concealment being pure questions of fact for the jury. That narrows the complaint down to the subject of "deviation," which, as applied to marine insurance, is somewhat in the nature of a technical term. We concur that it was the duty of the Circuit Judge to construe the policy, a written instrument, explain what

was meant by the term "deviation" and its effect, and then leave it to the jury to say whether the facts found made out the defence. It would be unjust to take particular detached sentences of the charge and construe them without reference to the context, and taking the different parts of the charge and considering it as a whole, it seems to us that the judge did all it is said he should have done. In the very same connection from which the words quoted in the exception were taken, he proceeds to say: "In marine insurance, anything that materially varies the risk insured against discharges the insurer; and unexplained and unreasonable delay, not justified by necessity or incurred *bona fide* with a view to the purposes of the voyage, does so vary it."

We do not well see how the judge could have said more. The only "deviation" complained of was that of "delay"; that the boat was not fully manned and engaged every day; but at the time of the accident was lying at anchor in New River. In strictness, the doctrine of "deviation" applies to a particular voyage between places named, as to which delay in starting, change of season, local divergence, longer route, and many other circumstances may materially change the risk from that which was intended by all parties when the policy was effected. We do not, however, see how these things could be properly considered in reference to a policy not for a particular voyage, but for a year, so long as the insured vessel kept within her privilege "to tow phosphate rock and lumber in and around the rivers and creeks between Beaufort and Savannah, and to proceed to Charleston if necessary; also to tow vessels, not oftener than twice a month, from and to sea, off Tybee Light." 1 *Arn. Ins.*, 383, 409. But be this as it may, after the judge had charged the jury that "anything that materially varies the risk discharges the insurer," it was for them to say whether the risk had been so varied.

The third exception is as follows: That "his honor erred in charging: 'If the jury find that the loss has happened wholly from one of the perils insured against, then the negligence of the master and crew in failing to perform their duties as such is no defence to the company when the same did not contribute in any way to such loss.' This language, appellants submit, assumed as a fact the presence of a master and crew, whose negligence

would not exempt the insurers, and was calculated to mislead the jury."

We make the same remark as to this exception.   The charge must be considered as a whole.   The Circuit Judge seems to have been particularly careful to state the law fully upon the subject of seaworthiness.   Among other things, he said: "A policy of insurance on a vessel or tug imposes on the assured at all times during the continuance of the risk the legal duty of keeping the boat in a condition of reasonable security, and that if the plaintiffs or their agents allowed the 'Jennie' to remain in a leaky condition, anchored out in New River, with nobody on board competent to protect her against the perils to which she was exposed, and by reason of their negligence she sank, the plaintiffs are not entitled to recover," &c.   The defendants certainly had no right to complain of this charge.   Considering it as applicable only to the question of seaworthiness, we cannot say that it was error, but it came very near trenching on that other doctrine announced by the judge that "when the loss has happened wholly from one of the perils insured against, the negligence of the master and crew in failing to perform their duties as such is no defence to the company where the same did not in any way contribute to such loss."

For a period the effect of negligence on the part of the insured was in cases of insurance a vexed question ; but it seems to have been finally settled upon the ground that *causa proxima non remota spectatur.   Busk* v. *Royal Exch. Ass. Company,* 2 *Barn. & Ald.,* 82; *Columbia Ins. Company* v. *Lawrence,* 10 *Peters,* 507; *Street* v. *Augusta Ins. Company,* 12 *Rich.,* 13.   In the case first cited, the "Carolina," a Russian vessel, being delayed by stormy weather, was frozen up in the Gulf of Finland.   The crew was discharged until the breaking up of the ice the following spring, and the ship was left in charge of the mate, who lighted a fire in the cabin and went on board another ship to sleep.   About 4 o'clock the next morning the ship was discovered to be on fire, and was consumed to the water's edge.   It was conceded that the loss arose from the negligence of the mate, and it was held that "where the assured had once provided a sufficient crew, the negligent absence of all the crew at the time

of the loss was no breach of the implied warranty that the boat would be properly manned." This case has been followed, and the question may now be considered as finally settled. In our own case of *Street* v. *Augusta Insurance Company, supra,* Judge Wardlaw said: "A policy of insurance is construed so as to preserve its practical usefulness without nice metaphysical refinements. If a peril that has been insured against has been the immediate cause of the damage, the purpose of insurance would be defeated, and the general principle upon which courts refrain from considering 'the causes of causes' would be violated, by looking behind this peril for its cause."

The judgment of this court is that the judgment of the Circuit Court be affirmed.