The bill is filed by the trustee in bankruptcy of the New Milford Transportation Company. The company was the owner of "consents" or franchises to operate auto buses, granted by the municipalities concerned and approved by the board of public utility commissioners pursuant to "An act *Page 29 
concerning auto buses and their operation." P.L. 1926 p. 219.
In 1927 the company mortgaged the franchises to defendant Weiler to secure the sum of $7,000. For some reason the following year another mortgage, covering the same property, was executed to secure the same debt. Neither mortgage has been approved by the utility commissioners pursuant to the statute above mentioned or to the Public Utility act. P.L. 1911 p. 374; Cum. Supp. Comp.Stat. p. 2878 § 18.
On December 4th, 1931, judgment against the company in the Bergen common pleas was entered in favor of defendant Seacoast Credit Corporation for $14,881. The sheriff by virtue of the supplement to an act respecting executions (P.L. 1915 p. 182;Cum. Supp. Comp. Stat. p. 1205), immediately levied on the franchises and, by leave of the common pleas, sold the same to the judgment creditor for $5,000, which sum was of course not actually paid but was credited on the judgment. The utility commissioners have not approved this sale. On January 15th, 1932, the transportation company was adjudicated a bankrupt by the United States district court. There are other defendants who made claim to some interest in the franchises, but before final hearing they released to the trustee their interest therein. The prayer of the bill is, that the chattel mortgages as well as the sale by the sheriff be set aside and decreed to be of no effect as against complainant.
Prior to the enactment of the 1915 supplement to the Executions act, a franchise could not be sold on execution. Randolph v.Larned, 27 N.J. Eq. 557; State v. Turnpike Co.,65 N.J. Law 73. The supplement enacts that rights and credits of the defendant may be levied upon and sold by virtue of the execution. Section 2: "The term `rights and credits' includes all rights and credits which may be attached by writ of attachment against non-resident debtors and also includes rights and credits of an equitable nature except such trust funds as are now exempt by law." A franchise is not a right of an equitable nature.
The term "rights and credits" has appeared in our Attachment *Page 30 
act for many years. The act must be construed liberally for the benefit of creditors. Section 33: "It is the policy of modern legislation to facilitate the creditor in reaching the property of his debtor." Davis v. Mahany, 38 N.J. Law 104. Yet it is well settled that not all rights are subject to attachment. For instance, the right to a personal legacy, the salary due a public officer, money in court or in the hands of an officer, money due on a judgment, money due from the state to the debtor. Woodward
v. Woodward, 9 N.J. Law [*]115; Shinn v. Zimmerman,23 N.J. Law 150; Lodor v. Baker, Arnold Co., 39 N.J. Law 49. In some instances, the exemption from attachment is due to public policy and in others to a consideration of the rights of a garnishee.
The only public interest in a sale of bus franchises is that the purchaser be willing and able to operate bus lines in an efficient manner. This policy is served by requiring that the transfer be approved by the utility commissioners; subject to such approval, the holder of the franchises may sell them to anyone he pleases and for any price. I see no reason grounded in public policy why the franchises should not be sold on execution and so I conclude that they can be sold.
The sale, however, is subject to approval by the utility commissioners. A franchise is not transferable at all, without authority of the legislature. McCarter v. Vineland Light andPower Co., 73 N.J. Eq. 703. The Auto Bus act, section 2, provides that a "consent" to operate buses "may be transferred by the holder thereof, upon obtaining the approval of the board of public utility commissioners upon application to it by either the transferrer or the transferee." The Public Utility act, section 18, enacts that no public utility shall, without the approval of the board, sell, mortgage, or otherwise dispose of its franchises, privileges or rights, or any part thereof, and that every sale, or mortgage, made in violation of the provisions thereof, shall be void and of no effect. While a sale by sheriff on execution is not strictly a sale by the owner of the franchises, it has the same effect so far as concerns the public and should be conditioned by like limitations. It may be noted that the definition of public *Page 31 
utility in section 15 includes "trustees or receivers appointed by any court whatsoever," and thus subjects to the approval of the commissioners, sales by receivers. In order to be effective, execution sales must also be approved.
The sheriff's sale took place December 14th. Upon the filing of the bill in this cause the following April, the Seacoast Credit Corporation was restrained from attempting to deal with or dispose of its interest in the franchises. Perhaps this restraint interfered with its securing the approval of the utility commissioners to the sale, but for more than four months theretofore it had been at liberty to secure such approval and had failed to do so. Whether the commissioners considered the matter and refused to approve or whether no application was made to it, I do not know.
The statute does not specify any time within which approval must be obtained, but it does state that a sale without approval shall be void. Prior to approval by the commissioners, the purchaser has no title, legal or equitable, in the franchise, even though he has paid the purchase price and the seller has executed and delivered documents of title. The purchaser has only the right to apply for approval. If and when approval is granted, title then vests without further action by the parties. Application for approval should be promptly made and vigorously prosecuted, especially in the case of an execution sale, since after the sale and before approval, the execution debtor has little incentive to serve the public and the purchaser has no title which permits him to operate; meanwhile, the public must be inconvenienced. Four months' delay is much too long. At the time the bill was filed, the Seacoast Credit Corporation had no title to the franchises and through failure to obtain the approval of the utility commissioners, it had lost the right acquired at sheriff's sale.
The mortgages to the defendant Weiler are likewise void for want of approval of the commissioners.
Defendants contend that if their own title is bad, so is complainant's. The law is that the trustee in bankruptcy is vested with title to all the property of the bankrupt which, *Page 32 
prior to the petition, he could, by any means, have transferred. The fact that transferability depends on the consent of a third party, does not defeat the title of the trustee.
There are a number of cases in point relating to liquor licenses transferable only with the consent of some state regulatory body. Fisher v. Cushman, 103 Fed. Rep. 860;43 C.C.A. 81; In re John P. Doyle Son, 209 Fed. Rep. 1;126 C.C.A. 143; In re Benz, 218 Fed. Rep. 50; 134 C.C.A. 26. The license, or at least the right to sell it, passes to the trustee in bankruptcy, but the sale by him is subject to approval of the licensing authority and is ipso facto void if such approval be not given. Another group of cases deals with stock exchange seats transferable subject to the election of the transferee to membership in the exchange. Sparhawk v. Yerkes, 142 U.S. 1;12 S.C. 104; Paige v. Edmunds, 187 U.S. 596; 23 S.C. 200; Board ofTrade of Chicago v. Johnson, 264 U.S. 1; 44 S.C. 232. In the last case, Chief-Justice Taft said: "By operation of the bankrupt law, the membership passes subject to rules of the exchange to the trustee for his disposition of it. The trustee does not become a member but he does come into control of the bankrupt's right to dispose of the membership, and with the aid of the bankruptcy court can require the bankrupt to do everything on his part necessary under the rules of the board to exercise this right."
Title to the franchises passed, by operation of law, to the trustee upon his appointment and this transfer did not depend upon approval of the commissioners, although transfer by the trustee in bankruptcy to a third party will require such approval.
Lastly, defendants urge that the court of chancery has no jurisdiction of the controversy since no equitable rights are claimed by any of the parties and complainant has an adequate remedy at law. Counsel have not informed me, however, what this remedy is, and the only one which occurs to me is quo warranto.
The bill discloses that the Seacoast Credit Corporation, when the suit commenced, was operating three buses under one of the franchises but was not operating *Page 33 
under the other. The claim of that company to the latter franchise and the claim of Weiler under his mortgages, could not be adjudicated in quo warranto because there was no actual usurpation or intrusion into the franchise. Wentzell v.Steelman, 8 N.J. Mis. R. 503; 151 Atl. Rep. 116. The controversy between complainant and the credit corporation with respect to the franchise which the latter was actually executing, could perhaps be determined on an information in the nature ofquo warranto under section 12 of the Quo Warranto act. Comp.Stat. p. 4214. This section was first enacted in 1895. The enlargement of a legal remedy does not deprive chancery of a jurisdiction which it theretofore had, although it may result in chancery declining to exercise its jurisdiction. Before that enactment, the title of the relator could not be put in issue. Both the proceeding by the attorney-general at his own discretion and the proceeding by a relator in the name of the attorney-general under the ancient statute of 1795, were suits to vindicate public rights and did not resemble a civil suit interpartes. Bonynge v. Frank, 89 N.J. Law 239. The remedy at law is not adequate; it is only in this court that the entire controversy can be settled.
Complainant finds himself with title to intangible property so clouded by adverse claims as to make it unsalable. He is entitled to the aid of this court in establishing his title in order that he may convert the franchises into money for distribution among the creditors whom he represents. *Page 34