### In re BURNSTINE.

(District Court, E. D. Michigan, S. D. July 21, 1903.)

#### No. 518.

1. DEATH BY WRONGFUL ACT—CLAIMS—ASSIGNABILITY.

Under the Michigan act (Comp. Laws, § 10,427) relating to death by wrongful act, providing that an action may be brought by an administrator, but that the recovery shall pass to decedent's next of kin, a father being entitled to the entire recovery for the wrongful killing of his son, his right thereto constituted assets belonging to his estate in bankruptcy, within Bankr. Act July 1, 1898, § 70, subd. 5, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451].

2. SAME—TRANSFER.

Where a bankrupt, prior to his adjudication, orally transferred to his wife a claim against a railroad company for the wrongful killing of his son, in consideration of her payment of the funeral expenses and costs

of a tombstone for deceased, such transfer, not having been inspired by fraud, was valid to the extent it was accepted as security for the amount paid by the wife, and hence the husband's trustee in bankruptcy was only entitled to an assignment of the claim on payment of the amount expended by the wife on the faith thereof.

Upon referee's certificate, and upon specifications in opposition to the discharge of the bankrupt.

Maybury, Lucking, Emmons & Helfman, for bankrupt.

Adolph Sloman and Bernard B. Selling, for opposing creditors.

SWAN, District Judge. Jacob Burnstine, of Detroit, Mich., was adjudged bankrupt upon his voluntary petition filed April 25, 1902. His schedule showed debts to the amount of $19,066.23, and but nominal assets. At the time the bankrupt filed his petition for adjudication he filed a petition in the probate court for the county of Wayne for the appointment of his wife as administratrix of his son, Abraham Burnstine, 18 years of age, who was killed in a railway accident April 6, 1902, and whose estate consisted in a right of action against the railway company. Specifications in opposition to the discharge of the bankrupt have been filed in behalf of Peritz Bros. and in behalf of Charles F. Funke. The specifications of Peritz Bros. charge:

"(1) That the bankrupt had committed an offense punishable by imprisonment in knowingly and fraudulently concealing, while a bankrupt, from his trustee, his property and rights in the estate of his son, Abraham Burnstine, deceased.

"(2) That he made a false oath in the proceedings, in stating that all of the property owned by him was wearing apparel to the amount of $100.

"(3) That he had committed an offense punishable by imprisonment in that he had stated in his petition that it contained an inventory of all his property, both real and personal."

The specifications filed by Funke were broader, of the like import, and based, in the main, upon the same transactions as those made by Peritz Bros.

With regard to the second and third specifications filed by Peritz Bros., charging Burnstine with making false oaths in the proceedings, and those of Funke that the bankrupt "knowingly and fraudulently concealed, while a bankrupt, from his trustee, property belonging to his estate," the referee's finding acquitted the bankrupt of any fraudulent purpose in the matters pleaded in the specifications, and adjudged that the bankrupt's dealings with his property, prior to the passage of the present bankruptcy act, were not fraudulent as to creditors, nor did the evidence show any continuing trust in fraud of the bankrupt act in the transfers made to his wife, which were the subject of investigation, and the basis, in part, of the opposition of creditors to the bankrupt's discharge. A careful reading of the testimony sent up with the referee's report in relation to the charges of fraudulent concealment of property, and that of knowingly and fraudulently making false oaths in relation to his proceedings in bankruptcy, to wit, in making oath to schedule B annexed to his petition, marked "Statement of all Property of Bankrupt," because, as the specifications charge, he omitted from his schedule certain items of property, is convincing of the correctness of the referee's conclusion finding adversely to these specifications. The

bankrupt is an ignorant man, unable to read or write English or Hebrew. His occupation is that of a rag peddler, and there is ground for the belief that his present wife has been the real manager, if not the owner, of his business, since the transfers of property to her in 1896, and is much more conversant with the bankrupt's affairs than himself. While the bankrupt's testimony is marked by many instances of lack of knowledge of the facts in issue, his advanced age, ignorance, and limited acquaintance with the English language are apparently responsible for most of the deficiencies and failures of recollection in his testimony. These infirmities are far from sufficient to establish the alleged fraudulent intent of the bankrupt, and I agree with the referee's conclusions that the opposing creditors have failed to sustain the second and third of the Peritz specifications and the specifications filed by Funke.

The referee further certifies:

"* * * That, in the course of the proceedings in said cause before me, a motion was made in behalf of the trustee of said estate, asking that the said bankrupt be directed to execute under seal, in such form as may be satisfactory to said petitioner, an assignment of all his right, title, and interest in and to the estate of his son, Abraham Burnstine, deceased, and of said claim against the Grand Trunk Western Railroad. Thereupon an answer was filed by the said bankrupt, averring, among other things, that his interest in the claim against said railroad was not property within the meaning of the national bankruptcy act of 1898 [Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418)], which passes to the trustee in bankruptcy; and further averring that the wife of said bankrupt paid the funeral expenses of Abraham Burnstine with the understanding that they were to be paid out of the moneys collected from the aforesaid railroad. Thereupon I ordered that the bankrupt should assign all his right, title, and interest in and to the estate of his son, Abraham Burnstine, deceased, to the trustee, and at the request of the bankrupt the said question is certified to the judge for his opinion thereon."

The question presented by this latter certificate was argued upon the fourth and fifth subdivisions of section 70 of the bankruptcy act (30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]), vesting in the trustee, by operation of law, the title of the bankrupt, as of the date he was adjudged a bankrupt, to, "all * * * (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." The referee has found that the claim for damages against the railroad company for the death of the bankrupt's son was not fraudulently omitted from the bankrupt's schedule. The testimony warrants this conclusion, and there remains, therefore, only the inquiry whether that claim is included in subdivision 5 of section 70 of the bankruptcy act, and should be surrendered by the bankrupt, as ordered by the referee.

The question of the transferability of a claim for negligence causing death has not been passed upon by the Supreme Court of Michigan. The statute of Michigan upon which this claim is founded is entitled "An act requiring compensation for causing death by wrongful act, neglect, or default." Comp. Laws, § 10,427. It is almost literally a reproduction of the New York statute passed for the same purpose. The right of action is conferred upon and must be brought in the names of the personal representative of the deceased person, and the

amount recovered is to be distributed to the persons and in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate. The administrator of the deceased bringing such action is merely a conduit or channel designated by the statute to convey to the persons entitled to the damages recovered. The beneficiaries are the next of kin. The administrator, therefore, is merely the trustee of the next of kin—the real parties in interest. The claim is a right of action of the estate of the deceased—not of his next of kin, and therefore not within section 70, subd. 6, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]. In this case the bankrupt would be entitled under the statute of Michigan to the entire recovery as the next of kin of the intestate. Under the broad word "property," used in subdivision 5, it is manifest that the intent of the act was to vest the trustee with all rights and claims having a pecuniary value, and which could be transferred by the party or parties entitled. The damages done to the estate of the deceased by the wrongful act or neglect which caused his death practically descend to his next of kin in the same manner as any other personal property, are as capable of ownership as any other property, and are legally assets. The right of action given to the administrator, by the statute of Michigan, for negligently causing the death of his intestate, constitutes assets of the estate of the deceased, within the meaning of the statute which authorizes administrators in case of the death of a nonresident "leaving estate to be administered in this state." Findlay v. Chicago, etc., R. R. Co., 106 Mich. 700, 64 N. W. 732; Merkle v. Bennington, 68 Mich. 134, 146, 35 N. W. 846; 11 Am. & Eng. Enc. Law (2d Ed.) pp. 763, 764. The bankrupt, as next of kin, being entitled to the whole recovery, if had, there is no reason why he could not transfer his interest in the right of action, which, being assets for the purpose of founding administration, is therefore "property" which he "could have transferred." The rigorous common-law rule that choses in action were not assignable has been greatly relaxed, and nowadays it is generally held that almost everything except an action for fraud may be assigned. Finn v. Corbitt, 36 Mich. 318. It is ruled in Quin v. Moore, 15 N. Y. 432, Meekin v. Brooklyn Heights Ry. Co. (N. Y.) 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635, and Ludwig v. Glaessel, 34 Hun, 412, that rights of this nature are transferable. The fact that the claim is contingent and uncertain in amount constitutes no objection to its assignability. In Erwin v. United States, 97 U. S. 392, 24 L. Ed. 1065, the court approved Comegys v. Vasse, 1 Pet. 193, 7 L. Ed. 108, where it is said that:

"It might in general be said that vested rights ad rem and in re, possibilities coupled with an interest, and claims growing out of and adhering to property, will pass by assignment. Bankr. Act April 4, 1800, c. 19, 2 Stat. 19, provided that all the assets, real and personal, of every nature and description, to which the bankrupt might be entitled, either in law or in equity, should go to his assignee; and the court held that the words were broad enough to cover every description of vested right and interest attached to and growing out of property; that under them the whole property of a testator would pass to his devisee, and whatever an administrator could take in case of intestacy would go to him."

It seems clear that, had Burnstine died before becoming bankrupt, his administrator would have succeeded to the interest of his intestate

in the damages recovered by the administrator of the deceased in the statutory action. The conclusion, therefore, is that the bankrupt's interest in this claim is property, and alienable within subdivision 5 of section 70 (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), and should have been scheduled by the bankrupt as part of his estate.

The testimony shows that prior to Burnstine's adjudication he had, by parol agreement, transferred to his wife, the stepmother of his deceased son, the claim against the railroad company, in consideration of her paying the funeral expenses and the cost of a tombstone for the deceased. The fact that this was a parol agreement constitutes no objection to its validity. Draper v. Fletcher, 26 Mich. 154. Mrs. Burnstine has performed her part. The proofs fail to show that this agreement and transfer was inspired by a fraudulent purpose on the part of husband or wife; but it is fairly inferable from the proofs that it was given and accepted as security for Mrs. Burnstine's advances, and not as an absolute transfer. The probable recovery, if any, which could be had from the railroad company, would be small. The deceased was but 18 years of age. There is no evidence that he contributed anything to the support of his father or stepmother, and the proof is that one attorney who had been employed by the bankrupt, and had investigated the circumstances of the death, was unwilling to prosecute the action, although hopeful at first of recovering large damages. After that the bankrupt brought the claim to his present attorneys, who have been unable, notwithstanding vigorous efforts, to obtain from the railway company anything more than a compromise offer of $200 in settlement. Burnstine is entitled to the presumption that his action in transferring the claim to his wife was actuated by a desire to pay proper respect to the memory of his son, which he could not have done without her aid. If the trustee desires to take the claim subject to the equities which have arisen in favor of Mrs. Burnstine by the payment of the funeral expenses and for the monument, viz., $395, he may do so, and he is entitled, upon paying that sum to Mrs. Burnstine, to an assignment of the claim for the benefit of creditors. If the bankrupt is willing to make, and the trustee will accept, the transfer on these conditions, the bankrupt, upon conveying his interest in the claim to the trustee, will be entitled to his discharge. In case the trustee refuses to accede to these terms and repay Mrs. Burnstine for the advances mentioned within 30 days, the bankrupt will receive his discharge. With this modification, the findings and conclusions of the referee are affirmed.