95 A.2d 267 (1953)
McNEILLY et al.
v.
FURMAN et al.
No. 32, 1952.
Supreme Court of Delaware.
March 3, 1953.
Carroll F. Poole, of Wilmington, for appellant.
Daniel J. Layton, Jr., of Georgetown, for Daisey Evans Furman, appellee.
Before SOUTHERLAND, Chief Justice, WOLCOTT, Justice, and SEITZ, Chancellor.
SOUTHERLAND, Chief Justice.
The question presented is whether a right of action for wrongful death belonging to a bankrupt passes to the trustee.
The facts are these:
On July 3, 1950, the husband of Daisey Evans Furman was injured in an automobile accident and died as the result thereof. On January 9, 1951, the widow brought an action in the Superior Court of Sussex County to recover damages for his death. On December 15, 1951, she was adjudicated a bankrupt and appellant McNeilly was appointed trustee.
On March 20, 1952, the trustee filed a motion in the widow's suit to be joined as party plaintiff. (This motion was by consent treated as a motion to substitute the trustee as sole party plaintiff.) It was grounded upon the contention that the widow's right of action formed part of the bankrupt's estate under applicable provisions of the National Bankruptcy Act and that title thereto passed to the trustee upon his appointment. The court below denied the motion. See Del.Super., 90 A.2d 670. The trustee has appealed.
Section 70, sub. a of the National Bankruptcy Act, 11 U.S.C.A. § 110, sub. a, so far as here pertinent, provides as follows:
"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have *268 transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: Provided, That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process: * * *."
Thus, in respect of all rights of action except those enumerated in the proviso, either assignability or liability to seizure by judicial process is the general test of the trustee's title; the specific actions named in the proviso, however, do not pass to the trustee unless subject to seizure by judicial process.
The trustee contends that a right of action for wrongful death under the applicable Delaware statute is not an action for injuries to the person and is therefore not one of the actions enumerated in the proviso; and further contends that such an action is assignable by its owner and hence passes to the trustee under the general test of title.
The contention of the appellee (the widow)[1] is twofold: (1) that a right of action for wrongful death is included as one of the actions enumerated in the proviso and that such a right is not subject to seizure by judicial process; and (2) that even if not so included it is, in any event, nonassignable and not subject to seizure and hence does not pass to the trustee.
In dealing with these questions the court below confined its attention to the question of assignability or nonassignability of the right of action. The question of the liability of such a right to seizure by judicial process was not considered, presumably because counsel for the trustee made no serious attempt (as he makes no serious attempt here) to argue that it is so subject to seizure. On the authority of the language in Hazzard v. Alexander, 6 W.W.Harr. 212, 36 Del. 212, 173 A. 517, and of other cases, the court below held that the action was not assignable and hence did not pass to the trustee.
As above stated, if the right of action here involved is one within the language of the proviso of clause (5) and is not subject to judicial seizure, it does not pass to the trustee. To these questions we direct our attention.
Our statute creating an action for wrongful death is as follows:
"Whenever death is occasioned by unlawful violence or negligence, and no suit is brought by the party injured to recover damages during his or her life, the widow or widower of any such deceased person, or, if there is no widow or widower, the personal representatives, may maintain an action for and recover damages for the death and loss thus occasioned." 10 Del.C. § 3704(b).
The question to be determined is whether an action for wrongful death under this statute is an action for "injuries to the person of the bankrupt or of a relative, whether or not resulting in death".
The proviso in clause (5), which contains the language with which we are concerned, was inserted in the Bankruptcy Act in 1938. 52 Stat.L. 879. Under the provisions of clause (5) as it existed before the amendment any right of action which was either assignable or subject to seizure by judicial process passed to the trustee. Since an unliquidated claim based on a tort is rarely subject to such seizure, assignability or nonassignability usually furnished the test whether or not the action passed to the trustee. Decisions under the former clause (5) had generally held that actions for personal torts not directly affecting the bankrupt's property were not assignable and did not pass to the trustee. 6 Am.Jur. § 870, and cases cited; 4 Collier on Bankruptcy, 4th Ed., p. 1162. But the decisions were not in accord whether or not a right of action for wrongful death was assignable and hence passed to the trustee. In the *269 cases of In re Burnstine, D.C.E.D.Mich. 1903, 131 F. 828, and In re Fahys, D.C.S.D. N.Y.1937, 18 F.Supp. 529, it was held that such an action under the respective statutes of Michigan and New York is a property right and is assignable, and hence passes to the trustee. On the other hand, in Dent v. Mendenhall, 1925, 139 Miss. 271, 104 So. 82, such an action was held, as a personal action in tort, not to vest in the trustee. Also a right of action for wrongful death under the Pennsylvania statute was held in Marsh v. Western, etc., Ry. Co., 204 Pa. 229, 53 A. 1001, to be nonassignable; and a like holding with respect to the Connecticut statute is found in Carson v. Gore-Meenan Co., D.C.Conn.1916, 229 F. 765, which is cited with approval by Chief Justice Layton in Hazzard v. Alexander, supra.
It is to be noted that the language of the proviso referring to actions for personal injuries speaks of injuries to the person of "a relative" and significantly adds the clause "whether or not resulting in death". This suggests that one of the purposes of the 1938 amendment to clause (5) was to set at rest the conflict in the decisions, above noted, with respect to rights of action for wrongful death. It is true that the Report of the House Committee on the Judiciary on the revision of the National Bankruptcy Act, Report No. 1409, 75th Cong., 1st Sess., does not deal specifically with the language of the proviso of clause (5). It says merely:
"The changes in clause (5) are declaratory of the existing law, and therefore clarifying and tend to avoid misunderstanding and misconstruction." Report No. 1409, p. 34.
However, in Vol. 4, Collier on Bankruptcy, 14th Ed., 1942, Par. 70.28, we find the following discussion of the state of the law on this question prior to the 1938 amendment, together with the text writer's comment on the effect of the amendment:
"Prior to the Act of 1938 there was some difference of opinion as to actions in this category, particularly actions for wrongful death. It was fairly well settled, however, that an action of tort for personal injuries or similar personal tort actions seeking damages did not pass to the trustee under either § 70a(5) or (6). As to actions for wrongful death, some courts held that such actions were not to be distinguished from other tort actions for personal injuries and hence did not vest in the trustee. Other courts, nevertheless, held that where under applicable state law the right of action was transferable it passed to the trustee in bankruptcy under § 70a (5) if not § 70a(6).
"These matters were settled by the 1938 Act, which added a proviso to § 70a(5) in the following language:
"`Provided, That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process.'
"Thus under the present provision mere transferability is not enough; in order for an action for wrongful death to vest in the trustee, the action must be subject to attachment, execution, garnishment, sequestration, or similar judicial process under state law. And, on the other hand, certain actions such as for libel, slander, seduction and criminal conversation despite any former law to the contrary, will pass to the trustee if they are subject to attachment, garnishment or the like under applicable state law." (Pp. 1162-1163.)
The construction of the statute placed upon it by the writer of the text seems sound. A "relative" includes a spouse, Bankruptcy Act, Sec. 1, clause 27, 11 U.S. C.A. § 1 (27) and what is an "action * * * for injuries to the person * * * of a relative * * * resulting in death" if not an action for death by wrongful act? The trustee argues that the phrase "action for personal injuries" does not embrace an action for wrongful death. In Homiewicz v. Orlowski, 4 W.W.Harr. 66, 34 *270 Del. 66, 143 A. 250, 251, an action for wrongful death was held not affected by the Delaware statute of limitation, 10 Del. C. § 8118, barring after one year an action for damages upon a claim for personal injuries, on the ground that such an action is not one to recover for personal injuries sustained by the deceased, but an action by a statutory plaintiff to recover for "`the death and loss'" occasioned by unlawful violence or negligence.
This argument assumes that the phrase in clause (5)  "injuries to the person"  is to be read without regard to the additional language that qualifies it. But this manifestly cannot be done. The additional language referring to injuries to a relative resulting in death must mean something. It was used, we think, in the light of the fact that the state statutes creating the action for wrongful death generally provide that the action is for the benefit of the widow and next of kin or other members of the family. Tiffany, Death by Wrongful Act, Sec. 80. If it should be said that the well-known phrase, "an action for wrongful death", would have been more apt, it may be replied that not all of the state statutes create a new or separate right of action for the death; technically speaking, some are survival statutes. See Tiffany, op. cit. § 24 ff. In view of the basic purpose of most of the state statutes, that is, to provide some compensation to the surviving members of the family for the death of a near relative or spouse, it can be said with considerable force that the language selected is entirely appropriate to a description of the right of action with which we are here concerned.
Analysis of the language of the proviso of clause (5) confirms this conclusion. The phrase, "whether or not resulting in death", has no application to injuries to the bankrupt, since if the death of the bankrupt (or of a relative) occurs after the filing of the bankruptcy proceedings, it is an immaterial circumstance; and if the person having the right of action dies before proceedings are filed, bankruptcy proceedings will not lie. In re Morgan, D.C., 26 F.2d 90. Hence the phrase "whether or not resulting in death", must be related to the death of a relative who had suffered personal injuries resulting in death prior to the institution of the bankruptcy proceedings. A right of action belonging to a surviving member or surviving members of a family for injuries to a relative resulting in death cannot be, as suggested by the trustee, an action for pain and suffering of the relative in his lifetime. If that action survives at all it passes to his administrator. Hence the language of clause (5) referring to personal injuries to a relative resulting in death can refer only to a right of action vested in a surviving member or members of a family to recover damages for such death. Such an action is the familiar action for wrongful death.
We are of opinion that the action brought by the widow in the court below is within the proviso of clause (5) of section 70, sub. a of the National Bankruptcy Act.
There remains for consideration the question whether a right of action for wrongful death is subject to seizure by judicial process. This is to be determined by the law of Delaware. 6 Am.Jur. § 845; Eaton v. Boston, etc., Trust Co., 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723; In re Berry, D. C., 247 F. 700.
An action for wrongful death is a tort action in which the damages are unliquidated. There appears to be no Delaware authority passing upon the question whether under our attachment laws a chose in action of that sort may be the subject of judicial seizure.
The question is fundamentally one of statutory construction.
The Delaware statutes regulating attachment and garnishment at law provide for a writ of attachment which commands the sheriff to attach the defendant's property, real and personal, "and his rights and credits". He is required to take possession of the personal property, rights and credits and have them inventoried and appraised. 10 Del.C. § 3511. Proceedings against garnishees require an appearance and answer of the garnishee on which judgment may be rendered. The attaching creditor may require the garnishee to plead nulla bona, in which case the "garnishee stands in * * the same position that he would have been *271 in had the suit been brought by his own creditor." Netter v. Stoeckle, 4 Pa. 345, 56 A. 604, 605; 10 Del.C. § 3517.
These statutes, which stem from colonial times, see Vol. I, Laws of Del., Ch. 200a, appear to contemplate the seizure of debts or other liquidated demands, or  perhaps  demands readily capable of liquidation. Cf. In re Greene, 1 W.W.Harr. 326, 31 Del. 326, 114 A. 279.
Attachment in equity is governed by §§ 365 and 366 of Title 10. Section 365, relating to execution process after judgment by default, provides for "seizure of the real and personal property" of the debtor. The process contemplated by this section, which derives from an act of 1806, Vol. 4, Laws of Del., Ch. 21, is the writ of sequestration. In Hayes, Adm'r, v. Hayes, 4 Del.Ch. 20, it was employed to sequester a chose in action consisting of a debt due to the defendant by a resident of the state. The form of the writ followed the form of the writ of attachment at law and directed the sheriff (in addition to seizing real and personal estate) to sequester all the defendant's "rights and credits whatsoever".
Section 366, which provides for mesne attachment in Chancery, was enacted in 1927, Vol. 35, Laws of Del., Ch. 217. It authorizes process to compel the appearance of a nonresident defendant by "the seizure of all or any part of his property".
Because of the statutory provisions for the appearance and answer of a garnishee, the remedy for the attachment of a chose in action at law may well be more circumscribed, under our statutes, than the remedy in equity, Weinress v. Bland, 31 Del.Ch. 269, 71 A.2d 59, although in modern times the distinction seems of little value.
All the statutes contain language of considerable breadth. Attachment at law permits the seizure of "rights", and attachment or sequestration in equity permits the seizure of any "property". In the broad sense, any right of action may certainly be said to be a "right" and to be a species of "property". But whether it constitutes a "right" or a species of "property" within the meaning of attachment laws is quite another matter. "[I]t is well settled that not all rights are subject to attachment". Hart v. Seacoast Credit Corp., 115 N.J.Eq. 28, 169 A. 648, 649.
We do not think that any of these statutes contemplates the judicial seizure of a chose in action consisting of a tort claim for unliquidated damages. Historically attachment was strictly confined to a "debt", that is, a liquidated claim. Not only was this so, but in foreign attachment the cause of action sued upon must formerly have been founded upon a claim arising out of contract, Smith v. Armour & Co., 1 Pa. 361, 40 A. 720; and specific legislation was required to permit its use in tort actions. See the act of March 12, 1901, Vol. 22, Laws of Del., Ch. 207. The phrase "rights and credits" in the statutes regulating attachment at law has never been deemed, so far as we know, to embrace an unliquidated tort claim. The word "rights" is bracketed with the word "credits", which imports a fixed monetary obligation. In practice the statute has been construed to apply only to contract obligations liquidated or readily capable of liquidation. We are cited to no case in Delaware attempting to subject to attachment processes a tort claim neither liquidated nor readily susceptible of liquidation; and an examination of the decisions of the Superior Court in attachment cases fails to disclose any such instance. The inference seems clear that specific statutory authority therefor would be required.
This is the general rule applicable under the statutes of most states. Although garnishment statutes are remedial in nature and should be liberally construed (Rood, Law of Garnishment, § 8), they have seldom been read as authorizing the seizure of claims of the kind here discussed. Rood, op. cit., § 150; Drake on Attachment, § 548; 4 Am.Jur. § 206; 38 C.J.S., Garnishment, § 8; cases collected in note at 93 A.L.R. 1088.
Our practice in equity has been similar. We can find no instance where process in equity has been used to sequester such a claim.
Certainly there has been a steady trend of the law to make all species of property, so far as possible, freely alienable and subject to the demands of the owner's creditors. But, because of its speculative nature, an unliquidated tort claim is an asset of dubious *272 value, especially so when prosecuted by a creditor  a stranger to the injured person. We see no reason to extend by judicial construction the process of attachment to such a claim. If such a step is to be taken it is for the legislature and not for the courts.
We accordingly hold that the action here involved, as a tort claim neither liquidated nor readily susceptible of liquidation, is not subject to attachment, execution, garnishment, sequestration or other judicial process under our laws.
We thus find it unnecessary to consider the holding of the court below that an action for wrongful death under our statute is nonassignable. This holding we neither approve nor disapprove.
Although placing our conclusion upon different grounds, we are in accord with the result reached by the court below. The order appealed from is therefore affirmed.
NOTES
[1] The other appellees occupy a neutral position and have taken no part in the appeal.