IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JERZY WIRTH AND FLOYD WHITE, | ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C. A. No. N14C-02-137 MBO |
| TOP BAIL SURETY, INC., JOHN S. DONAHUE IV, AND HARRY O. JENNINGS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## **ORDER**

Jerzy Wirth and Floyd White ("Wirth," "White" and collectively, the "Plaintiffs") are judgment creditors of John S. Donahue IV, Harry O. Jennings, and Top Bail Surety, Inc. ("Donahue," "Jennings," and "Top Bail," collectively "the Defendants"). Plaintiffs have attempted execution upon a judgment owed jointly and severally by the Defendants, by, *inter alia*, serving a Writ of Attachment *Fieri Facias* upon 1st Choice Bail Bonds ("1st Choice") as garnishee to defendant Donahue, and by serving a Writ of *Capias Ad Satisfaciendum*[1] upon the New Castle County Sheriff to compel satisfaction of the judgment by defendant Jennings.

---

[1] *See* DEL. CODE ANN. tit. 10, §§ 5051-5053 (2022).

1

## STATEMENT OF FACTS

In 2008, the parties were involved in litigation in the Court of Chancery.[2] That litigation resolved on July 10, 2009, by way of an executed Settlement Agreement and Mutual Release signed by the parties.[3] On the same date, the parties executed a Promissory Note whereby the Defendants agreed to pay Wirth the principal sum of $240,128.00, with interest accruing at 10.5% per year.[4] The Promissory Note required monthly payments and included default provisions for, among other things, failure to make payments as agreed. In 2011, Defendants defaulted on the Promissory Note.

On February 14, 2014, Wirth filed a Complaint in this Court, seeking a judgment against Defendants resulting from the debt owed from the aforementioned Court of Chancery litigation.[5] On February 14, 2018, this Court entered a Stipulated Judgment for Plaintiffs in the amount of $406,856.37.[6]

Plaintiffs commenced execution upon the Judgment. Specifically, on February 6, 2020, the New Castle County Sheriff served a Writ of Attachment *Fieri Facias* ("Writ of Attachment Fi. Fa.") on Duvilla & Co., the registered agent of 1st

---

[2] *See Jennings v. Wirth*, C.A. No. 3584-VCS (Del. Ch.).
[3] Stipulation of Dismissal, *Jennings v. Wirth*, C.A. No. 3584-VCS (Del. Ch. July 13, 2009) (D.I. 38); *see also* Compl., Ex. A, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (D.I. 1).
[4] Compl., Ex. B.
[5] *Id.* On February 1, 2017, plaintiff White filed a motion to intervene. (D.I. 54). On February 22, 2017, the Superior Court granted White's motion. (D.I. 58).
[6] D.I. 76.

Choice.[7] 1st Choice is a bail bond company that Donahue exclusively utilizes to market and sell bail bonds. The writ was served to seize, from 1st Choice, Donahue's "money, goods, credits and effects, rights, bonds, personal property, BUF amounts and BUF accounts."[8] At that time, Plaintiffs claimed, *inter alia*, that Donahue was an employee of 1st Choice, and attempted to secure a wage attachment from 1st Choice to satisfy the judgment.[9]

On February 26, 2020, 1st Choice filed a timely Response to the Writ of Attachment Fi. Fa.[10] 1st Choice claimed Donahue was an independent contractor, not subject to wage attachment.[11] 1st Choice denied possessing or controlling any of Donahue's personal property, but conceded it maintains a $40,000.00 Built-Up Fund Account ("BUF Account") controlled by Lexington National Insurance Company ("Lexington"), earmarked for Donahue once all bail bonds issued by Donahue are

---

[7] Sheriffs Return, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. Feb. 11, 2010) (D.I. 91).

[8] Issuance of Writ, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. Jan. 24, 2020) (D.I. 90). A Built-Up Fund account, or "BUF" account, is an account which is required and controlled by an insurance company, serving as collateral for a bail agent's bonds.

[9] Plaintiffs have since abandoned the claim that Donahue is a 1st Choice employee. On May 13, 2021, White told the Court Plaintiffs were "willing to accept that [Donahue] is an independent contractor...." *See* May 13, 2021 Garnishment Hearing Trans. at 7:4-8. Later, during the same hearing, White reiterated, "the plaintiffs collectively take the position that Mr. Donahue is an independent contractor, as represented by [1st Choice's] counsel." *Id.* at 62:10-14.

[10] 1st Choice Response to Writ of Attachment Fi. Fa., *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. Feb. 26, 2020) (D.I. 93) (hereinafter "1st Choice Answer"). The Court will treat 1st Choice's timely responsive pleading as its "Answer" to the Writ of Attachment Fi. Fa. *See* Super. Ct. Civ. R. 5(aa)(2).

[11] 1st Choice Answer ¶ 3.

3

exonerated.[12] As to the money in the BUF Account, 1st Choice claims (i) the account serves as collateral for issued bail bonds, (ii) Lexington exclusively controls the BUF Account, and (iii) the account is not subject to attachment.[13]

On May 6, 2020, Plaintiffs filed a Memorandum of Law in support of the Writ of Attachment Fi. Fa.[14] Contrary to its representation in the February 6, 2020 Writ of Attachment Fi. Fa., Plaintiffs argued Donahue was working as an independent contractor, and each time Donahue sold a bail bond through 1st Choice, 1st Choice would owe Donahue a commission. This commission, for each bond sold, is "income," subject to attachment.[15] As to the BUF Account funds, Plaintiffs request this Court order 1st Choice, as garnishee, to submit security in the amount of $40,000.00 for the BUF Account funds in 1st Choice's possession."[16]

On May 7, 2021, 1st Choice filed a response to Plaintiffs' May 6, 2020 Memorandum of Law.[17] 1st Choice asserted: (1) Donahue is not an employee,

---

[12] *Id.* ¶¶ 5, 8.

[13] *Id.* ¶ 7. On March 3, 2020, Plaintiffs filed a "Traverse of Garnishee 1st Choice Bail Bonds, LLCs' Answer," summarily indicating that 1st Choice's Answer was "evasive, untrue or legally insufficient." D.I. 96.

[14] Pls.' Notice for Demand to Sale Levied Real Estate, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. May 6, 2020) (D.I. 102). Plaintiffs attached the Memorandum of Law to a "Demand for the NCC Sheriff to Sale Levied Real Estate under Writ of Fi. Fa."

[15] *Id.* ¶ 14(a).

[16] *Id.* ¶ 11. Plaintiffs' request for security is inconsistent with its original position – that it had a present right to attach the BUF Account funds.

[17] 1st Choice Response to White's Mem. Regarding Writ of Fi. Fa., *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. May 7, 2021) (D.I. 131) (hereinafter "1st Choice Resp. to Fi. Fa. Mem.").

therefore he is not subject to wage attachment;[18] (2) the BUF Account is not subject to attachment because (a) it is controlled by Lexington; and (b) 1st Choice lacks the authority to disburse the BUF Account; [19] and (3) 1st Choice does not possess any Donahue property, beyond the BUF Account (controlled by Lexington).[20]

## DISCUSSION

### A. The Writ of Attachment *Fieri Facias*

A Writ of Attachment *Fieri Facias* is a form of legal process used to enforce a judgment.[21] The authority for a Writ of Attachment *Fieri Facias* is statutory:

> The plaintiff in any judgment in a court of record, or any person for such plaintiff lawfully authorized, may cause an attachment, as well as any other execution, to be issued thereon, containing an order for the summoning of garnishees, to be proceeded upon and returned as in the cases of foreign attachment. The attachment, condemnation, or judgment thereon, shall be pleadable in bar by the garnishee in any action against the garnishee at the suit of the defendant in the attachment.[22]

Attachment through garnishment allows a judgment creditor to "make the debt of damages recovered by the judgment out of the defendant's property not in his legal

---

[18] 1st Choice asserts Donahue is not an employee, therefore "1st Choice cannot garnish these amounts pursuant to [10 *Del. C.* § 5031]." *See id.* ¶ 14. Further, 1st Choice claimed that, as an independent contractor, Donahue does not receive "wages," and therefore "there is nothing to garnish." *Id.* ¶ 21.

[19] *Id.* ¶¶ 8, 9.

[20] *Id.* ¶ 8.

[21] 2 Victor B. Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware* § 1150 (1906).

[22] DEL. CODE ANN. tit. 10, § 5031 (2022) (Execution attachment).

possession, but in the possession of another."[23] "Garnishment attaches at the time the garnishee is served and continues upon all moneys which accrue to the debtor's credit until the garnishment is answered."[24]

A garnishee is a person or entity, not the debtor, who a judgment creditor believes possesses "goods, chattels, rights, credits, moneys, effects, lands and tenements" of the debtor.[25] By attaching the property of the defendant debtor in the possession of the garnishee, the judgment creditor can attempt to use legal process to satisfy the judgment owed.

Judgment creditors' rights to recover from a garnishee are limited, particularly if the debtor's right to recover their property from the garnishee is constrained:

> An attaching creditor stands in no better position than the defendant in the judgment, as to the collection of a debt due to the latter from the garnishee. The right of such creditor to recover from the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability is that he has funds, property or credits in his hands belonging to the debtor, for which the latter would have the right to sue. The garnishee stands in every respect in the same position as if the suit had been brought by his own creditor. When a debt is due from a garnishee to a judgment debtor by virtue of an agreement existing between them, the garnishee is entitled to avail himself of all the defenses that could be made against the party to whom the debt is owing and with whom the contract was made...[26]

---

[23] 2 Woolley, *Delaware Practice* § 1152.
[24] *Cooper's Home Furnishings Inc. v. Lolley*, 270 A.2d 676, 678 (Del. Super. Ct. Oct. 9, 1970). Plaintiffs served 1st Choice's registered agent on February 6, 2020 at 12:20 P.M., and 1st Choice filed its Answer to the Writ of Attachment Fi. Fa. on February 26, 2020. *See* D.I. 91, 93.
[25] DEL. CODE ANN. tit. 10, § 3508.
[26] 2 Woolley, *Delaware Practice* § 1190.

6

If the debtor cannot compel the garnishee to pay money or deliver certain property to him in an action at law, the creditor has no greater claim by way of garnishment against the garnishee.[27]

### (1) Plaintiffs' Claims as to 1st Choice as Garnishee

There are three general categories of property Plaintiffs seek to attach from 1st Choice through executing the Writ of Attachment Fi. Fa.: (1) commissions owed Donahue from the sale of 1st Choice bail bonds; (2) the BUF Account; and (3) miscellaneous Donahue property which Plaintiffs claim are in the possession of 1st Choice, subject to attachment. It is the Plaintiffs' burden, to demonstrate by a preponderance of the evidence, that 1st Choice is in possession of the property identified in the Writ of Attachment Fi. Fa. subject to attachment.[28]

### a. Donahue's Income as an Independent Contractor.

The evidence establishes that Donahue is an independent contractor, and he accumulates income by exclusively marketing and selling 1st Choice bail bonds. Donahue completes a sale of 1st Choice bail bonds two ways. In the first, he sells a 1st Choice bail bond to a customer, the customer pays Donahue for the bond, with cash or check, and that check is payable to "John Donahue."[29] Donahue retains the

---

[27] *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 263 (Del. 1983).

[28] *Netter v. Stoeckle*, 56 A. 604, 605 (Del. Super. Ct. May 26, 1903).

[29] Garnishment Hr'g Tr., 26:22–27:6, 29:6-14, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. May 13, 2021) (D.I. 132) (hereinafter "Garnishment Hr'g Tr.").

7

cash payments and presents the checks to a bank for processing. These transactions are direct payments to Donahue, where 1st Choice does not receive the customer's complete payment for a bail bond.

In a second transaction, Donahue sells a customer a 1st Choice bail bond, but the customer pays Donahue via credit card, or with a check made out to 1st Choice as payee.[30] Donahue remits this entire payment to 1st Choice, 1st Choice processes the payment, disburses commissions to itself and Lexington, and then issues Donahue a check for selling the bail bond to a customer. In this second transaction, the customer's payment is received and processed by 1st Choice, before disbursement to Donahue and Lexington. Donahue's share of this transaction is subject to attachment.

1st Choice asserts that because Donahue is an independent contractor, his income is not subject to attachment. But, an independent contractor's earnings are, in fact, subject to attachment. In *Delaware Trust Co. v. Carolina Freight Carriers Corp.*,[31] this Court considered an appeal wherein the judgment creditor was attempting to satisfy a judgment, and to do so, the plaintiff attempted to compel the debtor's employer to produce "records showing the gross net earnings paid to" the debtor, a truck driver.[32] The garnishee employer claimed that it was not obliged to

---

[30] *Id.* at 30:6-12. Donahue currently lacks the ability to process credit card payments.
[31] 1986 WL 2831 (Del. Super. Ct. Mar. 5, 1986).
[32] *Id.* at *1.

8

produce the debtor's records because the debtor was not an employee within the meaning of 10 *Del. C.* § 4913(c), and his earnings were not subject to attachment.

This Court disagreed:

> [T]he earnings of independent contractors may be attached, notwithstanding the language of 10 *Del. C.* §4913(c), which does not include such earnings as wages. The exemption statute states that "eighty five percent of the wages for labor or service of any person residing within the State shall be exempt from mesne attachment and execution attachment process. . ." 10 *Del. C.* § 4913(a). As noted, the purpose of this statute is to protect a debtor and a debtor's family from the obvious burden associated with a forced reduction in the amount of take home pay available to a wage earner. Nothing in the language of this statute suggests that this exemption precludes altogether the attachment of the earnings of independent contractors. On the contrary, that the statute distinguishes between wage earners and independent contractors indicates only that independent contractors are not afforded the protection of the statute that no more than fifteen percent of the earnings of persons who are masters of their own time and effort may be attached.[33]

1st Choice, as garnishee, has an obligation to produce Donahue's property, *in its possession*, subject to attachment. While Donahue's income, as an independent contractor, is subject to attachment, 1st Choice can only produce Donahue's property in its possession, which occurs when 1st Choice processes payments for bail bonds issued by Donahue–specifically when those payments are remitted by credit card, or

---

[33] *Id.* at \*3.

9

by check made payable to 1st Choice. This income is subject to attachment.[34]

### b. **The BUF Account.**

Plaintiffs assert a BUF Account held by 1st Choice is subject to attachment. 1st Choice maintains a BUF Account worth $40,000.00 for Donahue's benefit but claims that Lexington exercises exclusive control over the BUF Account, and 1st Choice lacks the power or authority to release the funds in the account to plaintiffs.[35] That authority rests with Lexington.[36]

Plaintiffs have failed to demonstrate Donahue can compel 1st Choice to deliver the BUF Account to him in an action at law.[37] The evidence before the Court demonstrates that the BUF Account is in 1st Choice's possession, it is created and maintained to act as security for issued bail bonds, and it is exclusively under Lexington's direction and control.[38] Neither Donahue, nor 1st Choice, has the right

---

[34] During the May 13, 2021 Garnishment Hearing, White suggested this Court issue an Order to prevent Donahue from securing a "windfall" by receiving direct payments from clients, and instead "require Mr. Donahue to bring all the cash sales into 1st Choice's office with his report, turn the money over to Mr. Clark, then Mr. Clark can issue out whatever checks that he deems appropriate under the agreements that he has and, in fact, garnish the wages." Garnishment Hr'g Tr. at 64:2-9. Not only would this suggested process prevent Donahue from earning any income, but this requested Court intervention is inconsistent with the basic premise of garnishment – that the garnishee is responsible to produce the property of the debtor *in its possession.* Furthermore, Plaintiffs have not demonstrated that this Court, as a court of law, possesses the authority to act as suggested. In any event, this Court declines Plaintiffs' invitation to dictate business practices between Donahue and 1st Choice.

[35] 1st Choice Resp. to Fi. Fa. Mem. ¶ 8.

[36] *Id.*

[37] "The test of the right to garnish is whether or not the garnishee has funds in his hands belonging to the debtor for which the debtor could bring suit." *K-M Auto Supply, Inc. v. Reno,* 236 A.2d 706, 707 (Del. Dec. 4, 1967) (citing 2 Woolley, *Delaware Practice* § 1179).

[38] *See* Pls.' Notice for Demand to Sale Levied Real Estate, Ex. C4, Producer Agreement ¶¶ 9-10.

10

to access the BUF Account funds until all bail bonds issued by Donahue are exonerated, and Plaintiffs have not demonstrated otherwise.[39] Donahue's rights to receive the funds are restricted, and, as Donahue's rights to access the BUF Account funds are constrained, Plaintiffs' ability to attach the funds through garnishment is unavailable.[40]

Similarly, in *Shakin v. Abrams*, a creditor, after obtaining a judgment, sought to compel the Metropolitan Life Insurance Company ("Met Life"), as garnishee, to satisfy the judgment out of funds the debtor had deposited with Met Life to protect a company against potential future losses.[41] Specifically, the creditor sought to compel Met Life to complete an accounting and pay the debt owed plaintiff.[42] Met Life objected, claiming that the debt was not subject to garnishment.[43] The New Jersey court, relying exclusively on Delaware Superior Court precedent, agreed, holding the funds deposited at Met Life were not subject to attachment:

> The agreement in question evidences a trust relationship and not that of a debtor and creditor. And where funds as here are transferred for the payment of specific claims or as security for a definite purpose, there is an appropriation or pledge that said funds be used for such specific purpose; places them beyond the grasp of the creditor or pledgor. The plaintiff stands in the same shoes as the debtor and any defense good against the latter would inure to the garnishee.[44]

---

[39] *Id.*
[40] *Netter*, 56 A. at 605.
[41] 173 A. 136 (D.N.J. 1934).
[42] *Id.* at 137.
[43] *Id.*
[44] *Id.* (citing *Netter*, 56 A. at 605; *Brown v. Hartmann & Fehrenbach Brewing Co.*, 40 A. 60 (Del. Super. Ct. Feb. 16, 1898)).

11

The BUF Account funds are also "security for a definite purpose ... beyond the grasp of the creditor or pledgor" – they serve as security for the bail bonds Donahue has already sold through 1st Choice. The BUF Account funds are not subject to attachment.

Accordingly, the Plaintiffs' request to attach the BUF Account is denied. Plaintiffs' request to have the garnishee post security for BUF Account funds is also denied.

### c. Miscellaneous Donahue property allegedly in 1st Choice's possession.

Plaintiffs assert that miscellaneous Donahue property remains in the possession of 1st Choice and is subject to attachment.[45] Again, it is Plaintiffs' burden to demonstrate, by a preponderance of the evidence, that Donahue's property exists and is subject to attachment.[46] The Court will address Plaintiffs' request for production of each specific type of property for attachment:

*1. BUF Account funds paid by Donahue and any interest earned thereon:*

As indicated *infra*, BUF Account funds are not subject to attachment. Plaintiffs' request is denied.

*2. Credit Card Receipts or receivables held by 1st Choice:*

---

[45] Pls.' Notice for Demand to Sale Levied Real Estate at 9-10.
[46] *Netter*, 56 A. at 605.

Credit Card payments and check payments processed by 1st Choice which reflect payments to Donahue (within the relevant time frame) are generally subject to attachment.

> *3. Funds of Donahue Deposited in "a Financial Institution," and bank statements for Bank of America account ending in 8807:*

Plaintiffs have not identified any specific Donahue property in a financial institution subject to attachment, and Plaintiffs have not demonstrated that funds in a Bank of America account ending in 8807 (to the extent one may exist) belong to Donahue. Attachment therefore cannot be granted, and Plaintiff's request is denied.

> *4. All refunds owed for overpayments to 1st Choice:*

1st Choice denies the existence of any overpayment.[47] Plaintiffs have failed to identify overpayments subject to attachment. Attachment therefore cannot be granted, and Plaintiffs' request is denied.

> *5. All interest in any bail forfeitures:*

1st Choice denies the existence of interest owed Donahue.[48] Plaintiffs have not identified any interest earned, belonging or due to Donahue, in the possession of 1st Choice. Attachment therefore cannot be granted, and Plaintiffs' request is denied.

> *6. Rights and credits in other contracts, assignments, and agreements, including leases or rental agreements between 1st Choice and any member and Donahue:*

---

[47]  *See* 1st Choice Resp. to Fi. Fa. Mem ¶ 14(f) (D.I. 131).

[48]  *Id.*

13

Plaintiffs have asserted an entitlement to any "rights" and "credits" of Donahue's in 1st Choice's possession, subject to attachment. Specifically, Plaintiffs argue an entitlement to any "rights" which emanate from any contract to which Donahue is a party.[49] For example, Plaintiffs claim that because Donahue and 1st Choice, through its owner, Harry Clark, have entered a verbal agreement for Donahue to exclusively market and sell 1st Choice bail bonds, Donahue's "right" to sell bonds, and all that flows from that "right," including but not limited to income, is subject to garnishment.[50] In fact, Plaintiffs argue they are entitled to proceeds from any and all "verbal agreements" between Donahue and 1st Choice, whether they involve rental income,[51] proceeds from cash bails,[52] or funds received as a result of processing credit cards.[53] 1st Choice has denied the existence of any aforementioned agreements.[54]

Plaintiffs' claim of entitlement to "rights" and "credits" is inconsistent with Delaware law. "It is well settled that not all rights are subject to attachment."[55] The

---

[49] Garnishment Hr'g Tr. at 43:11-22.
[50] *Id.*
[51] *Id.* at 55:4-10.
[52] *Id.* at 55:16-20.
[53] *Id.* at 56:3-5.
[54] 1st Choice Resp. to Fi. Fa. Mem. ¶ 14(g).
[55] *McNeilly v. Furman*, 95 A.2d 267, 271 (Del. 1953) (citing *Hart v. Seacoast Credit Corp.*, 169 A. 648, 649 (N.J. Ch. 1933).

terms "rights" and "credits" "imports a fixed monetary obligation."[56] As noted in *Woolley*:

> Of the rights and credits of the defendant that are liable to attachment, simple contract debts due the defendant are the most common illustration. A debt secured by a mortgage, or a debt by judgment and execution levied, is subject to attachment. The interest or share of an heir at law in recognizance in the Orphan's Court is likewise liable to attachment, but the interest of an heir at law in intestate lands cannot be attached.[57]

In *McNeilly v. Furman*, the Delaware Supreme Court recognized that, in practice, the garnishment statute has been construed to apply to contract obligations liquidated or readily capable of liquidation, and "specific statutory authority" for attachment to a right or credit is required.[58] Plaintiffs have not identified any contract obligation, or any other "right" or "credit," which has either been liquidated or is readily capable of liquidation. Nor have they identified a statute that authorizes attachment to a specific "right." Attachment therefore cannot be granted, and Plaintiffs' request is denied.

> 7. *All business records including records of bails sold by Donahue and accounting and payment records related to Donahue including copies of 1099s and LLC distributions and records and copies of documents related to cash bails, and cash bail receipts placed by Donahue with any court or federal agency:*

---

[56] *Id.* at 271.

[57] 2 Woolley, *Delaware Practice* § 1179.

[58] *McNeilly*, 95 A.2d at 271 ("The inference seems clear that specific statutory authority therefor would be required.").

15

1st Choice denies possessing any of Donahue's business records.[59] Additionally, 1st Choice's business records are not the property of Donahue and are not subject to attachment. Attachment therefore cannot be granted, and Plaintiffs' request is denied.

*8. Office equipment and supplies:*

1st Choice denies possession any office equipment or supplies belonging to Donahue,[60] and Plaintiffs have not identified specific office equipment or supplies belonging to Donahue possessed by 1st Choice. Attachment therefore cannot be granted, and Plaintiffs' request is denied.

## B. The Writ of *Capias Ad Satisfaciendum*

The authority for a writ of *capias ad satisfaciendum* is also statutory. The issuance of the writ includes specific prerequisites and requirements which, if not followed, are fatal to the validity of the writ. Specifically, 10 *Del. C.* § 5051 provides:

> (a) No writ of capias ad satisfaciendum shall be issued upon any judgment in a civil action against any person in this State, until a writ of fieri facias on the judgment has issued, and it appears from a return of such fieri facias, that the defendant therein has not either real, or personal property within the county sufficient to satisfy the debt, or damages in the fieri facias expressed; or until the plaintiff in such judgment, or some credible person for the plaintiff, makes a written affidavit, to be filed in the Prothonotary's office before the issuing of the writ, stating that he or she verily believes that the defendant has not

---

[59]  1st Choice Resp. to Fi. Fa. Mem. at 5 n.8.
[60]  *Id.* at ¶ 14(i).

16

either real, or personal, estate sufficient to satisfy the debt, interest and costs contained in such judgment.

(b) Any writ of capias ad satisfaciendum issued, contrary to the provision in subsection (a) of this section shall be void, and the plaintiff obtaining such writ shall be liable to all the costs of the same.[61]

In addition to the specific statutory requirements of § 5051, 10 *Del. C.* § 5052 requires the plaintiff seeking a writ of *capias ad satisfaciendum* to complete and file an Affidavit of Fraud, specifically setting forth the debtor's alleged fraudulent transactions. Section 5052 provides, in pertinent part:

No writ of capias ad satisfaciendum shall be issued out of any court of this State upon a judgment in a civil action, against any person in this State, nor shall any person be imprisoned for the nonperformance of a judgment rendered in any court for the payment of money, until the plaintiff . . . in addition to the requirement of § 5051 . . make a written affidavit . . . stating that the defendant in such judgment is justly indebted to the plaintiff in a sum exceeding $50, and that he or she verily believes the defendant has secreted, conveyed away, assigned, settled or disposed of either money, goods, chattels, stocks, securities for money, or other real, or personal estate, of the value of more than $50, with intent to defraud his or her creditors; and shall moreover, in such affidavit, *specify and set forth the supposed fraudulent transactions.*[62]

Failure to meet the statutory requirements of § 5052 renders the writ void, and the plaintiff is liable to defendant for "all costs of the same."[63]

---

[61] DEL. CODE ANN. tit. 10, § 5051 (2022) (Issuance of writ).

[62] *See id.* § 5052 (emphasis added); also see *Johnson v. Temple*, 4 Del. 446, 447 (Del. Super. Ct. 1846) ("[t[]he writ of ca. sa., should not be issued without an affidavit charging the defendant with fraud.")

[63] *Id.* § 5052(b). Consistent with § 5052's requirement that the Affidavit specify and set forth the fraudulent transactions, Superior Court Civil Rule 9(b) requires that in a Complaint alleging fraud, those allegations must be pled with particularity. Super. Ct. Civ. R. 9(b). To satisfy this

17

On June 23, 2021, Plaintiffs served a Writ of *Capias Ad Satisfaciendum* on the New Castle County Sheriff to take Defendant Jennings into custody—to compel Jennings to satisfy the judgment.[64] According to the Praecipe, the Sheriff was to keep Jennings in custody until the entire balance of the judgment is paid, or Jennings pays "at least $165,000.00 in cash or certified funds."[65] The writ includes an affidavit, which indicates Jennings is "justly indebted to White in a sum exceeding $50.00"; Jennings is "about to abscond and did say to White on two occasions . . . that he intended to move to the State of Florida;" and Jennings informed White "he had no assets that could be applied to the satisfaction of the aforesaid judgment."[66] The affidavit further avers that Jennings possesses personal property which could be used to satisfy the judgment, including a Derringer firearm; three vehicles;

---

particularity requirement, a litigant "must state the time, place, and contents of the alleged fraud, as well as the individual accused of committing the fraud." *Universal Capital Management, Inc. v. Micco World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Ct. Feb. 1, 2012) (quoting *Northpointe Holdings v. Nationwide Emerging Managers, LLC*, 2010 WL 3707677, at *8 (Del. Super. Ct. Sept. 14, 2010).

[64] Pls.' Writ of *Capias Ad Satisfaciendum, Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. June 23, 2021) (D.I. 139) (hereafter "Pls.' Writ"). During the August 27, 2021 oral argument on Defendant Jennings Motion to Vacate the Writ of *Capias Ad Satisfaciendum*, White asserted the writ was intended to coerce a debtor to pay a debt:

> The entire intent of a capias ad satisfaciendum, Your Honor, is coercive. Okay? It is to take someone who has the means to either partially or fully satisfy a judgment to coerce them to pay. And that is exactly the situation here.... So what this does, essentially, is force Mr. Jennings to make a decision. He can either remain in jail and be defiant or he can pony up.

*See* Aug. 27, 2021 Oral Arg. Tr., 18:10-22.
[65] *See* Pls.' Writ.
[66] *See id.*, Affidavit of Plaintiff.

18

$12,000.00 in a Wells Fargo bank account; "money on deposit at TD and Citizen's Bank," and miscellaneous "corporate stock." White claims, without providing any evidence, that Jennings has "secreted, conveyed away, assigned, settled, or disposed of [personal property] with intent to defraud his creditors."[67]

On June 18, 2021, Jennings filed a Motion to Vacate the Writ of *Capias Ad Satisfaciendum*.[68] Jennings argues Plaintiffs failed to specify "the actual, alleged fraudulent transactions."[69] Jennings also asserts that this Court should vacate the writ of *capias ad satisfaciendum* as a matter of public policy.[70]

Because analysis of Plaintiffs' compliance with 10 *Del. C.* § 5051(a) is necessary, it is helpful to review the writ of attachment *fieri facias* Plaintiffs issued to levy Jennings' property. Specifically, on July 12, 2018, Plaintiffs issued a Writ of *Fieri Facias* to the sheriff to levy the property of defendant Jennings.[71] This writ directed the sheriff to attach "all the goods, chattels, rights, money, effects, stocks, bonds, vehicles, vessels, lands, tenements and hereditaments including business records not exempt from execution belonging to . . . Harry O. Jennings . . .."[72]

---

[67] *Id.*
[68] Def. Jennings' Mot. to Vacate Writ of *Capias Ad Satisfaciendum*, *Wirth v. Top Bail Surety, Inc. et al.*, C.A. No. N14C-02-137 MBO (Del. Super. Ct. June 18, 2021) (D.I. 136) (hereinafter "Jennings' Mot. to Vacate").
[69] *Id.* ¶ 12.
[70] *Id.* ¶¶ 15-24.
[71] D.I. 79.
[72] *Id.*

19

On October 24, 2018, the New Castle County Sheriff filed a return in this Court in relation to the July 12, 2018, Writ of Attachment *Fieri Facias*.[73] The return states "Nulla Bona" – meaning the sheriff did not identify and recover property subject to seizure at Jennings' residence. But, the Sheriff's return identifies a defect in the Writ of *Fieri Facias*: "Plaintiff failed to provide the Sheriff with required documentation (Hold Harmless Letter or Specific Instruction to Levy and Impound at Plaintiffs Expense) in order for the levy to be completed."[74] Therefore, due to Plaintiffs' failure to provide the required documentation to the Sheriff, the levy was ineffective, and the Sheriff could not determine if Jennings possessed real or personal property within the county to satisfy the debt.[75] Accordingly, this Court cannot conclude that a validly executed levy is evidenced by the return, and Plaintiffs cannot rely upon the July 12, 2018 return to establish Jennings does not possess either real or personal property within the county sufficient to satisfy the debt, as required by 10 *Del. C.* § 5051(a).

Alternatively, Plaintiffs could also satisfy § 5051(a) if, prior to the issuance of the writ, Plaintiffs filed, with the Prothonotary, a written affidavit, stating the Plaintiffs, (or someone writing on Plaintiffs' behalf) "believe[d] the defendant has not either real, or personal, estate sufficient to satisfy the debt, interest and costs

---

[73]  D.I. 87.
[74]  *Id.*
[75]  *Id.*

20

contained in [the] judgment."[76] Plaintiffs did not do so. Because Plaintiffs failed to satisfy the exacting requirements of 10 *Del. C.* § 5051(a), the writ is void.[77]

Assuming, for argument's sake, that Plaintiffs satisfied the requirements of § 5051(a), the writ of *capias ad satisfaciendum* is nonetheless void. Section 5052(a) requires Plaintiffs to provide an Affidavit of Fraud ("Affidavit"), which must set forth specific facts which establish Jennings took specific action intending to defraud Plaintiffs, by secreting, conveying, assigning, settling, or disposing of property, with the intent to defraud Plaintiffs. Plaintiffs have neither identified any specific property which has been removed or hidden by Jennings, nor stated any facts which suggest Jennings' intent to defraud Plaintiffs.

A liberal reading of the Affidavit suggests Plaintiffs may argue Jennings could have acted fraudulently two ways –but neither circumstance establishes the secreting or disposal of assets, or behavior which infers fraudulent conduct. First, the Affidavit asserts Jennings intended to "abscond" by moving to Florida, and Plaintiffs know this because Jennings, on one or more occasions, told Plaintiffs he intended to move to Florida.[78] This fact does not identify an asset Jennings attempted to hide from attachment, nor does it establish intent to defraud. To the contrary, notifying a creditor that a debtor may move to another state does not suggest the debtor is trying

---

[76] DEL. CODE ANN. tit. 10, § 5051(a).

[77] *Id.*

[78] Pls.' Writ, Affidavit of Plaintiff (D.I. 139).

to avoid or elude a creditor, but exhibits a degree of openness and candor.[79]  Second, the Affidavit lists property Plaintiffs believe Jennings possesses which could be presented to satisfy the judgment, including a firearm, three vehicles, corporate stock, and three bank accounts. The Affidavit also summarily suggests Jennings secreted away some of this property "with the intent to defraud his creditors."[80] However, the Affidavit fails to identify the specific property Jennings attempted to hide from Plaintiffs and does not "specify and set forth the supposed fraudulent transactions" as required by 10 *Del. C.* § 5052(a).  In sum, Plaintiffs failed to describe how any specific property was secreted, or how that action intended to defraud them.[81]  The Affidavit fails to provide any facts supporting a claim Jennings intended to commit fraud.  Plaintiffs' Affidavit is therefore deficient, and the writ of *capias ad satisfaciendum* is void.[82]

Finally, Jennings has requested an award of attorney's fees for defending against the writ of *capias ad satisfaciendum*.[83]  Delaware Courts follow the

---

[79] The Court is not aware of any statute or rule which prohibits a debtor from moving from one state to another. Plaintiffs' suggestion that this conduct is fraudulent or shady is not supported by the record before it.

[80] Pls.' Writ, Affidavit of Plaintiff (D.I. 139).

[81] DEL. CODE ANN. tit. 10, § 5052(a).

[82] Because the writ of *capias ad satisfaciendum* is void, the Court need not address the Sheriff's motion filed in opposition to the writ, namely that executing their obligations under the statute pose significant logistical challenges in execution.  Additionally, Plaintiff White suggested he filed a similar writ in *Floyd White v. Markee Ellerbe*, C.A. No. 02J-01-829. He did not. On November 20, 2003, White filed a Motion for Issuance of Civil Capias, because Markee Ellerbe failed to comply with discovery and related Superior Court Orders requiring his appearance and/or compliance.

[83] *See* Jennings' Mot. to Vacate.

American rule, which provides that each party is generally responsible for their own attorney's fees.[84] Moreover, "[i]n an action at law, a court may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of statute or contract."[85]

Jennings' counsel has not identified a statute or contract at issue which expressly authorizes the award of attorney's fees. But, 10 *Del. C.* § 5051(b) and § 5052(b) expressly provide for awarding "costs." The writ of *capias ad satisfaciendum* is void, and while Jennings is not entitled to attorney's fees, he is entitled to reimbursement of costs associated with defending against the execution of the writ.[86]

---

[84] *Transched Systems Limited v. Versyss Transit Solutions, LLC,* 2012 WL 1415466, at *1 (Del. Super. Ct. Mar. 29, 2012).

[85] *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 370 (Del. Super. Ct. Sept. 20, 1982), citing *Honaker v. Farmers Mutual Insurance Co.,* 313 A.2d 900, 904 (Del. Super. Ct. 1973); *J.J. White, Inc. v. Metropolitan Merchandise Mart,* 107 A.2d 892, 894 (Del. Super. Ct. 1954); *Great American Indemnity Co. v. State,* 88 A.2d 426, 428 (1952); *Maurer v. International Re-Insurance Corp.,* 95 A.2d 827 (Del. 1953).

[86] *See* DEL. CODE ANN. tit. 10, §§ 5051(b), 5052(b).

## CONCLUSION

Plaintiffs' request to enforce a Writ of Attachment *Fieri Facias* as to garnishee 1st Choice is **GRANTED** in part and **DENIED** in part. The Writ of *Capias Ad Satisfaciendum* is **VOID**. The New Castle County Sheriff's Response to Motion to Vacate the Writ of *Capias Ad Satisfaciendum* is **MOOT**. Jennings' request for attorney's fees is **DENIED,** but he remains statutorily entitled to repayment of costs incurred while defending against the Writ of *Capias Ad Satisfaciendum.* Counsel for Jennings shall submit an affidavit providing reimbursable costs to the Court within two weeks of this ORDER.

**IT IS SO ORDERED.**

/s/ Martin B. O'Connor
Commissioner Martin B. O'Connor

Date: March 25, 2022

24